## Childs v. Pennsylvania R. R. Co., Appellant.

[Marked to be reported.]

*Railroads—Negligence—Rate of speed—Crossings—Warning.*

Railroad companies may move their trains in the open country at such rate of speed as the character of their machinery and road-bed may make practicable, and the maximum rate of speed under such circumstances is not a question for the jury. Nor is a high rate of speed negligence *per se*. But the greater the speed the greater the degree of care required in giving warning when approaching a road crossing at grade.

*Sufficiency of warning—Whistle or bell.*

If a train of cars is moving at such rate of speed that it would cover the distance between a point from which its bell could be heard at a crossing, and the place of crossing, in so short a time as to make the signal of little or no use to one in the act of crossing the track, then failure to give notice by the whistle from a longer distance would be negligence.

Argued March 30, 1892. Appeal, No. 154, Jan. T., 1892, from judgment of C. P. No. 1, Phila. Co., March T., 1891, No. 132, on verdict for plaintiff in trespass for death of her husband by defendant's negligent running of a train of cars. Before PAXSON, C. J., GREEN, WILLIAMS, MITCHELL and HEYDRICK, JJ.

On the trial, before BIDDLE, J., the evidence was to the effect that the accident happened at a crossing in the limits of the city of Philadelphia, between Wissinoming and Fitlers stations. At Frankford and at Bridesburg, the next stations to the west, the crossings are in built-up portions of the city and the neighborhood is thickly settled. After leaving Bridesburg, going to the east, there is an open stretch of country. The evidence as to the character of the country in the neighborhood of the crossing where the accident happened was meagre, but was to the effect that in the immediate vicinity of the crossing were open lots, brick fields, etc., and that the only house mentioned stood back from the railroad track some distance. From the place of the accident to Holmesburg Junction, a distance of about three miles to the east, there were about ten street crossings. The train which caused the accident, an express from New York, was running at the rate of from forty to fifty miles an hour. Plaintiff's evidence as to the omission of

warning by defendant was of a negative character, but defendant's witnesses testified that a bell was rung but no whistle sounded. The rules of the company forbade the blowing of the whistle within the limits of the city, unless in case of a sudden emergency.

The court below refused a request for binding instructions for defendant, and charged, *inter alia:* "The jury must determine whether the rate of speed is so excessive as to be considered by them an act of negligence for which the railroad company is responsible." Exception was taken to this portion of the charge, but it was not assigned for error.

Verdict for plaintiff for $5,000 and judgment thereon.

*Error assigned* was refusal of binding instructions for defendant, quoting the point.

*George Tucker Bispham*, for appellant.—The evidence as to failure to give warning being negative and the proof to the contrary being affirmative, no case of negligence in this respect is made out, and the case, in this branch, is ruled by Hauser v. Central R. R., 29 W. N. 471, 473.

The place where the accident occurred is in the open country, and the language of this court in Reading & Columbia R. R. v. Ritchie, 102 Pa., on page 425, where it is said, among other things, that it is not negligence for a train to run at a high rate of speed through an open country, is applicable here. If it be said that the proof that the neighborhood was sparsely settled was not sufficiently full, it must be remembered that the burden was on the plaintiff to show that the rate of speed was excessive by reason of the character of the neighborhood. There was an utter failure of evidence on this point, as on the other. The court therefore should have affirmed defendant's point. In place of doing that, the court left it to the jury to determine whether the rate of speed was excessive.

*Abram S. Ashbridge*, for appellee.—In Carroll v. R. R., 12 W. N. 348; Moore v. R. R., 108 Pa. 349; Pa. R. R. v. Bell, 122 Pa. 58; Marland v. R. R., 123 Pa. 487; and Blight v. R. R., 143 Pa. 10, the evidence was clear that if the parties injured had used their eyes they must have seen the approaching train. But this line of cases is distinguished from Longenecker v. R. R., 105 Pa. 328; Pa. R. R. v. Garvey, 108 Pa. 369; and Pa. R.

R. v. Coon, 111 Pa. 430, in which it is held that where it appears from the evidence or from presumption of law that the party injured took the necessary precautions and where there is evidence from which negligence on the part of the defendant may be inferred, the case is for the jury.

"Whether the population is dense or sparse at the *locus in quo,* what is the likelihood of danger, and what the rate of speed compatible with the public safety under the circumstances, are facts which necessarily find their way into the jury box." AGNEW, C. J., in Pa. R. R. v. Lewis, 79 Pa. 33.    And how and when warning should be given is a question for the jury : Longenecker v. R. R., 105 Pa. 328.    To same effect see McNeal v. R. R., 131 Pa. 184; Ellis v. R. R., 138 Pa. 506.

R. R. v. Ritchie, cited by the other side, does not apply. There the accident happened in the open country, and a whistle was blown ; besides, the evidence clearly showed contributory negligence.

Plaintiff's complaint here was that the train approached the crossing at a rapid and unreasonable rate of speed, without necessary and legal warning, and there was ample evidence to take the case to the jury.

OPINION BY MR. JUSTICE WILLIAMS, June 1, 1892.

This is a very close case.    The appellant does not allege, as the case is presented to us, that the plaintiff's husband lost his life because of his own want of care.    The contention of the defendant is that the evidence shows no negligence on the part of the company or its employees.    It concedes with entire fairness that if the evidence was sufficient to justify the submission of the question of its negligence to the jury, it has no ground for complaint at the manner of its submission; but it asserts that the evidence was not sufficient, and that the learned judge should have given a binding instruction to find for the defendant.

The question thus raised requires us to look into the testimony in order that we may ascertain whether such facts were disclosed by it as fairly presented the question of the defendant's negligence.    We learn that the scene of the accident was the crossing at Dark Run lane.    The tracks of the company at that point are five in number, and are crossed by the lane at

grade.   Childs and his son were returning at the close of the day from their work.   They reached the crossing after dark. Whether the night was rendered darker by the presence of fog is not clear, as the testimony on the subject is contradictory. When they reached the crossing they stopped near the track and looked up and down the railroad and listened.   The son testifies that they neither saw nor heard anything to indicate the approach of a train, and started to cross the tracks.   When they reached the last or most westerly one, he says the train came suddenly on them out of the darkness.   He succeeded in getting out of its way, but his father was struck, thrown through the air some sixty or seventy feet, and over the heads of two of the witnesses.   When he was reached he was dead.

This is a complete account of the accident as it is presented by the testimony.   The plaintiff contends that negligence appears in two particulars, viz., the rate of speed, and the want of any sufficient warning of the approach of the train.   As to the first of these there is no doubt that the speed was from forty-five to fifty miles per hour.   The train was an express running from New York to Philadelphia.   The locomotive engineer, who had charge of the train, testified that its average running time was fifty-three miles an hour; that it was on time when the accident occurred, and running at its schedule rate of speed.   On the other hand, it appears that the crossing is in a rural portion of the city, and that the lane is an unpaved wagon road, not to be distinguished from the country roads.

We do not think any question of negligence grows out of the rate of speed upon these facts.   The right of a railroad to move its trains at such rate as the necessities of its business, or the requirements of the public may make necessary, is subject only to such restrictions as may be found necessary in cities and populous towns.   In the crowded centres of business and population the public safety requires the speed to be moderated, but in the open country the single traveler over the wagon road may, under all ordinary circumstances, provide for his safety by compliance with the rule of law and of common sense that requires him to stop, look each way along the track and to listen, for an approaching train, before attempting to cross the track.   The movement of trains must be regulated by the railroad companies in the exercise of a business discretion, and

upon consideration of the competition they have to encounter and the necessities of modern business. We do not think a jury may fix the maximum rate of speed at which a train shall be moved in the open country, or that a high rate of speed is negligence *per se.* But while railroad companies may move their trains at such rate of speed as the character of their machinery and road-bed may make practicable, they must not forget that increased speed for the train means increased danger to those who must cross the tracks, and that increased care on their part to guard against accidents becomes a duty.

This brings us to our final inquiry, was proper warning given of the approach of the train to the crossing? Let us assume that the bell was rung, for although it is certain that neither Childs or his son, or the young ladies who saw the accident, heard it, yet the weight of the testimony is that it was rung from Holmesburg down by Wissinoming station till the accident occurred. We have, then, the following facts: (1) A train at fifty miles an hour would cover a distance of one mile in seventy-two seconds, an eighth of a mile in nine seconds. From Wissinoming, which the jury might well find from the evidence was the farthest point up the road at which a train could be seen, to the crossing, is a little over nine hundred feet, over which the train would move in twelve seconds. (2) The bell was rung above, at, and below, Wissinoming. (3) It was not héard at the crossing, or not till escape was possible only for the younger and more nimble of the two men who were crossing the tracks. The question suggested by these facts is whether, at such a crossing, and with such a rate of speed, the bell can be heard far enough to be a proper method of giving warning. If it could be heard a quarter of a mile away, it would afford a trifle more than a quarter of a minute for the traveler to determine what to do, and to do it. If the whistle could be heard twice or three times as far, the time afforded the traveler to escape from danger would be twice or three times as great. If, for want of a few additional seconds of time, which another mode of giving warning would have afforded, property or life be destroyed, is it not for the jury to say whether or not the longer warning ought, under the circumstances, to have been given? Our question, it will be remembered, is not whether the learned judge is right in all he said to

the jury on these subjects, but whether there was anything in the case for the consideration of the jury. We think there was one question fairly raised by the testimony which was exclusively for the jury, viz., whether a train approaching a crossing, situated like that at Dark Run lane, at a high rate of speed, can give sufficient notice of its approach by ringing the bell? If they should find the fact to be, that a train moving at the rate of speed at which this train was running, would cover the distance between a point from which its bell could be heard at the crossing, and the place of crossing, in so short a time as to make the signal of little or no use to one in the act of crossing the track, then the failure to give notice by the whistle from a longer distance away would be negligence.

If we are right in our conclusion that this question of fact was in the case, then it was the duty of the learned judge to submit it to the jury, and as no other question is presented on this record it becomes our duty to affirm the judgment.

The judgment is accordingly affirmed.