# Schwarz *v.* Delaware, Lackawanna & Western Railroad Company, Appellant.

*Negligence—Railroads—Grade crossing in open country—" Stop, look and listen "—Evidence—Speed.*

In an action against a railroad company to recover damages for the death of a person at a grade crossing, the presumption that the deceased stopped, looked and listened, is not overcome by the testimony of a single witness, the engineer of the locomotive, who stated that he

did not see the deceased stop, where it appears from the witness's own testimony that he was not in a position to see whether the deceased stopped or not.

When a witness testifies that, at or near a railroad crossing, his attention was upon an approaching train, that he was listening for it, heard its approach and heard no whistle, his testimony is not of a negative grade, but may be regarded, if believed, as proof that no whistle had been sounded, and it receives additional weight when taken in connection with the testimony of other witnesses which may be of a negative character.

In a grade-crossing case where a time-table is offered to show distance between points as a basis for fixing speed, it will not be rejected merely because of the allegation on the part of the railroad company that the distances were only approximate, but leave will be given to the company to show that it was not correct.

In an action against a railroad company to recover damages for death at a grade crossing in the open country, where there is nothing in the case to show that the warning by a whistle of the approach of a train at the crossing could not have been heard, and nothing to show that looking and listening would not have protected the deceased, it is reversible error for the court to so charge, that the jury may find a verdict in favor of the plaintiff simply because the train was running at a high rate of speed, even if the proper warning had been given of its approach.

It is not the rate of speed that prevents the traveler from passing safely over a railroad crossing in an open country, but the failure to give notice of the approach of the train by those in charge of it, or disregard of such notice by the traveler when given.

If one about to cross a railroad in the open country stops and listens, and no train is heard, that is, no warning of its approach is given by the engineer, the railroad company cannot, under such circumstances run its train at such a reckless rate of speed as will run down the unwarned traveler.

Argued March 12, 1907. Appeal, No. 374, Jan. T., 1906, by defendant, from judgment of C. P. Monroe Co., Feb. T., 1901, No. 11, on verdict for plaintiff in case of Richard F. Schwarz v. Delaware, Lackawanna & Western Railroad Company. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Trespass to recover damages for death. Before TREXLER, P. J., specially presiding. See 211 Pa. 625

The facts appear by the opinion of the Supreme Court.

At the trial defendant presented the following points :

1. Under all the evidence in this case the verdict of the jury should be for the defendant. *Answer :* The first point is refused without reading. [1]

3. In the absence of all evidence on the subject the presumption is that the decedent observed the precautions which the law prescribed, to stop, look and listen at a safe and proper place before driving upon the crossing. This presumption is a presumption of fact and is slight and faint at the best in this class of cases, and is completely overthrown by the affirmative proof to the contrary by the witness Riley, who testified that he was watching the horses and wagon from a point at least thirty feet away from the crossing, and that they did not stop before they were struck. *Answer :* The third point is refused without reading. [2]

5. There is no limit to the rate of speed at which a railroad company may run its trains through the open country and over the crossings of country roads, so long as the bounds of safety to patrons are not transgressed. *Answer :* The fifth point is refused without reading. [3]

6. Where the exact rate of speed of a train, as shown by its schedule and testified to by the engineer, who was running the same, shows a rate of speed of forty-five miles an hour, the court will consider of no value the testimony of a witness who states that the train was running very fast, but does not state how fast, nor fix any standard by which the speed of the train could be ascertained. *Answer :* The sixth point is refused without reading. [4]

7. It is not negligence for a railroad company to run a passenger train in the nighttime or early morning, an hour behind its schedule time and over a country crossing at the rate of forty-five miles an hour. *Answer :* The seventh point is refused without reading, it being covered in the general charge. [5]

8. The negative testimony of five witnesses that they did not hear the whistle blown, especially where all of said witnesses were a long distance away from the point where it became the duty of the engineer to blow his whistle, it being no part of the duty of such witnesses to listen for the approaching train or its signal, and their attention not having been

called to the fact of whether or not the whistle was blown by any circumstance whatever, amounts only to a scintilla, and cannot prevail against the overwhelming and positive testimony of the engineer and all the members of the train crew, and of two other wholly disinterested witnesses who were standing, the one about 100 feet and the other about 200 feet from the engine when it was whistling, and who watched it as it whistled and testify positively that the train did whistle. In such a case this positive testimony conclusively establishes the fact that the trainmen performed their duty, and the plaintiff is not entitled to recover. *Answer :* The eighth point is refused without reading. [6]

The court charged in part as follows :

[There is one question involved in the matter, and that is the question of speed. Ordinarily a railroad company has the right in the country districts, in the open country, to run its trains at such speed as it believes to be right or thinks proper. That is the general principle of law. If, however, the circumstances in any case are such that, running a train at a high rate of speed would prevent a person entering a crossing to get over before the train would get at the crossing, then it is the duty of the railroad company to moderate its speed. I state the matter plain in this connection, in order that there will be no quibbling about what the court says, and in order that if the court is wrong, it may be consistently wrong.] [7]

[Where there is much travel at all hours over a crossing, it is the duty of the company not to accelerate, but to moderate the speed of its trains. This, of course, applies to only exceptional cases. Ordinarily the ordinary country crossing does not admit of any qualification of this rule, but where the circumstances are different, there it is the duty of the company to moderate its speed. Now in this case, you will remember there is some testimony that at the crossing there was a creek nearby, the noise of which may have prevented the hearing of approaching trains, and the alarm given thereby. There is also some testimony that there was a tie yard along the road, between the road and the railroad track. There is also some testimony that there was a bluff along the track in the neighborhood of this crossing or a little beyond, and there

is also testimony that there were trees in foliage along the
track. . Whether all of these elements would be present to
determine at what distance the whistle should sound, and as
to what speed the locomotive and the train should approach
the crossing, is a matter for you to determine. The question
is, what. was the speed of the train upon this day, and after
you have determined that, then the question is, taking the
alarm given and the place it was given, would it afford suffi-
cient time for a person entering upon the track of the railroad
to pass over or to back, if that were feasible, in order to get
out of the way of the approaching train.] [8]

[The engineer testified that the speed was forty-five miles
an hour, that is my recollection of it, and the train crew testi-
fied to a speed of, varying from thirty to forty miles an hour,
as I remember it, but what the exact figures are, they are for
you. The witnesses for the plaintiff testified that the speed
was a rapid one, but I do not think any of them testified to a
certain rate of speed. It is apparent, gentlemen of the jury,
that all these statements are but estimates. We have no
testimony in this case which would fix with mathematical
precision the exact rate of speed that the train was going at,
at the time that these boys were struck, and it is therefore
for you, under all the evidence in the case, to determine at
what rate of speed this train was going, and I recur to this,
and you may apply it to my former instructions as to the rate
of speed as bearing upon the question as to whether the alarm
was given at the right place and whether it was sufficiently
given, under all the surroundings in this case, as described by
the witnesses.] [9]

Verdict and judgment for plaintiff for $4,282.50. Defend-
ant appealed.

*Errors assigned* were (1, 9) above instructions, quoting
them; (11) admitting in evidence time-table referred to in
the opinion of the Supreme Court.

*A. Mitchell Palmer*, with him *Everett Warren*, for appel-
lant.—There was sufficient evidence to rebut the presumption
that deceased stopped, looked and listened : Lonzer v. R. R.
Co., 196 Pa. 610.

The amount of negative testimony to show negligence was not sufficient to carry the case to the jury in the face of strong positive testimony showing absence of negligence on the part of defendant's servants: Culhane v. R. R. Co., 60 N. Y. 133; Haverstick v. Penna. R. R. Co., 171 Pa. 101; Knox v. Ry. Co., 202 Pa. 504; Hauser v. Central R. R. Co., 147 Pa. 440.

Speed of the train was not evidence of negligence under the circumstances: Newhard v. Penna. R. R. Co., 153 Pa. 417; Childs v. Penna. R. R. Co., 150 Pa. 73; Custer v. B. & O. R. R. Co., 206 Pa. 529.

*F. B. Holmes*, with him *J. H. Shull, C. C. Shull* and *Samuel E. Shull*, for appellee.—The evidence of negligence was sufficient to carry the case to the jury: Daubert v. D., L. & W. R. R. Co., 199 Pa. 345; Longenecker v. Penna. R. R. Co., 105 Pa. 328; Quigley v. Delaware & Hudson Canal Co., 142 Pa. 388; Cromley v. Penna. R. R. Co., 211 Pa. 429; Bartholomew v. Kemmerer, 211 Pa. 277.

The speed of the train was evidence of negligence: Lehigh Valley R. R. Co. v. Brandtmaier, 113 Pa. 610; Ellis v. R. R. Co., 138 Pa. 506; Bard v. P. & R. Ry. Co., 199 Pa. 94; Custer v. B & O. R. R. Co., 206 Pa. 529; Schwarz v. D., L. & W. R. R. Co., 211 Pa. 625.

OPINION BY MR. JUSTICE BROWN, May 13, 1907:

When this case was here before (211 Pa. 625), on appeal from the refusal of the court below to take off a judgment of nonsuit, we held that on the evidence submitted by the plaintiff the liability of the defendant was for a jury. On this second trial nothing offered by way of defense would have justified the court in directing a verdict for the appellant, and, but for a single error, the judgment would be affirmed.

The first contention of the appellant is that, from the testimony submitted by it, the presumption that the deceased had stopped, looked and listened was completely overcome and the court ought to have so instructed the jury. But a single witness, the engineer in charge of the locomotive, was called in the attempt to show that they had not stopped. He, however, does not say that they did not stop. His testimony is, " I did not see them stop." It is fairly argued by counsel for appellee that he was not able to say they had not stopped. He ad-

mits that between his seat in the locomotive and the road the boiler intervened at an elevation of nine inches above the level of his eyes. This in itself would have prevented his full view of the team as it approached the railroad, and he says that if the deceased had stopped at the foot of the ascent to the tracks he could not have seen them. His testimony as a whole, instead of having the effect claimed for it by the appellant, could have been of little, if any, use to the jury on the question of stopping.

A second complaint of the appellant is that in view of the positive testimony submitted by it that proper notice of the approach of the train had been given by a whistle, the court ought not to have permitted the jury to find that such warning had not been given on what is termed the negative testimony of plaintiff's witnesses. When a witness testifies that, at or near a railroad crossing, his attention was upon an approaching train, that he was listening for it, heard its approach and heard no whistle, his testimony is not of a negative grade, but may be regarded, if believed, as proof that no whistle had been sounded, and it receives additional weight when taken in connection with the testimony of other witnesses which may be of a negative character: Longenecker v. Penna. R. R. Co., 105 Pa. 328; Quigley v. Canal Co., 142 Pa. 388; Daubert v. Delaware, Lackawanna & Western R. R. Co., 199 Pa. 345. Five witnesses were called by the plaintiff who testified they heard no whistle before the train struck the wagon. Four of them were in close proximity to the crossing, and one of them, James Anderson, a railroader of five years' experience, was at work in his yard. He testified that when he heard the train coming he stopped work and listened for a minute or more. At the rate of speed testified to by the engineer, it must then have been three-quarters of a mile away from him. He said he listened and heard no whistle. This testimony could not be ignored. The weight of the testimony as to the whistling may have been with the defendant, but, even if the court below so thought, and we so think, it conflicted with that submitted by the plaintiff, sufficient, if believed, to justify a finding that the whistle had not been blown, and it was, therefore, for the jury alone to pass upon this important disputed question of fact: Cromley v. Penn. R. R. Co., 211 Pa. 429.

As the case must be retried, we need not consider the tenth assignment, which complains of the court's refusal to allow the appellant to file an additional reason for a new trial. The time-table offered in evidence by the plaintiff, showing the distance between Stroudsburg and Water Gap, was published by the company itself, and, therefore, presumably correct. It was offered in evidence to show the distance between these points, as a basis for fixing the speed at which the train was approaching the crossing. The sole objection to it as evidence was that the distance as given in it between the stations was only approximate, that it had not been printed for the purpose of showing the distance with any accuracy, but only for the general information of travelers. It was admitted with leave to the company to show that it was not correct, and, as the objection to it was properly overruled, the eleventh assignment is dismissed.

In his instructions to the jury the trial judge said : " There is one question involved in the matter, and that is the question of speed. Ordinarily a railroad company has the right in the country districts, in the open country, to run its trains at such speed as it believes to be right or thinks proper. That is the general principle of law. If, however, the circumstances in any case are such that, running a train at a high rate of speed would prevent a person entering a crossing to get over before the train would get at the crossing, then it is the duty of the railroad company to moderate its speed. I state the matter plain in this connection, in order that there will be no quibbling about what the court says, and in order that if the court is wrong, it may be consistently wrong." This was error, repeated in the court's refusal to affirm the fifth and seventh points presented by defendant. From that portion of the charge quoted the jury might have found a verdict in favor of the plaintiff simply because the train was running at a high rate of speed, even if the proper warning had been given of its approach. There was nothing in the case to show that the warning, by a whistle, of the approach of a train at the crossing could not be heard ; nothing to show that looking and listening would not protect the traveler from danger at that point. Further on the trial judge said what is the subject of the eighth assignment of error : " Where there is much travel

at all hours over a crossing, it is the duty of the company, not
to accelerate, but to moderate the speed of its train.    This, of
course, applies to only exceptional cases.    Ordinarily the or-
dinary country crossing does not admit of any qualification
of this rule, but where the circumstances are different, there
it is the duty of the company to moderate its speed.    Now in
this case, you will remember there is some testimony that at
the crossing there was a creek nearby, the noise of which may
have prevented the hearing of approaching trains, and the
alarm given thereby.    There is also some testimony that there
was a tie yard along the road, between the road and the rail-
road track.    There is also some testimony that there was a
bluff along the track in the neighborhood of this crossing or
a little beyond, and there is also testimony that there were
trees in foliage along the track.    Whether all of these elements
would be present to determine at what distance the whistle
should sound, and as to what speed the locomotive and the
train should approach the crossing, is a matter for you to de-
termine.    The question is, what was the speed of the train upon
this day, and after you have determined that, then the ques-
tion is, taking the alarm given and the place it was given,
would it afford sufficient time for a person entering upon the
track of the railroad to pass over or to back, if that were fea-
sible, in order to get out of the way of the way of the approach-
ing train?"

If the question had been as to where the whistle ought to
have been blown, there might have been no error in the court's
submitting the rate of speed to the jury to enable them to de-
termine how far from the crossing the signal ought to have
been given.    The instructions complained of may have been
intended for that purpose, but they could hardly have been
so understood by the jury, for they were told that where there
is travel at all hours over a crossing, it is the duty of the com-
pany to moderate the speed of its trains.    There was nothing
to show that a traveler approaching this crossing could not
have heard the whistle if it had been sounded.    The case was
tried on the theory that no whistle had been blown, not as to
where it ought to have been blown, and the speed of the train
was not involved.    The crossing was in an open country, and
in the direction from which the train was coming there was an

unobstructed view of 600 feet. Its speed was immaterial, for sight and sound would have availed to protect the deceased from collision with it.

It is not the rate of speed that prevents a traveler from passing safely over a railroad crossing in an open country, but the failure to give notice of the approach of the train by those in charge of it, or disregard of such notice by the traveler when given. What we said in 211 Pa. may have been misunderstood by the trial judge. All that was there said, or intended to be said, was that if one about to cross a railroad in the open country stops and listens, and no train is heard, that is, no warning of its approach is given by the engineer, the railroad company cannot, under such circumstances, run its train at such a reckless rate of speed as will run down the unwarned traveler. This simply means that it is not the rate of speed that is the negligence of the company, but the failure to give proper notice of the approach of the train. With proper warning given of such approach in an open country, rate of speed is not a question in determining whether the railroad company was negligent, and this has been settled in our own and other states.

In Reading & Columbia R. R. Co. v. Ritchie, 102 Pa. 425, we said : " The very purpose of locomotion by steam upon railways is the accomplishment of a high rate of speed in the movement of passengers and freight. It is authorized by law, and a railroad company in propelling its trains at high speed along its tracks in the open country is simply engaged in the lawful exercise of its franchise. If it is evidence of negligence that a train is run at this rate of speed, it must be because running at a less rate is a legal duty, but there is no such duty established either by statute or decision." One of the complaints of the plaintiff in Childs v. Pennsylvania R. R. Co., 150 Pa. 73, whose husband was killed at a railroad crossing in a rural portion of Philadelphia, was the rate of the speed of the train, the testimony showing it to have been from forty-five to fifty miles an hour. She was allowed to recover because the jury found proper warning had not been given of the approach of the train, but as to her contention that its speed was negligence, it was said : " We do not think any question of negligence grows out of the rate of speed upon

these facts. The right of a railroad to move its trains at such rate as the necessities of its business, or the requirements of the public may make necessary, is subject only to such restrictions as may be found necessary in cities and populous towns. In the crowded centers of business and population the public safety requires the speed to be moderated, but in the open country the single traveler over the wagon road may, under all ordinary circumstances, provide for his safety by compliance with the rule of law and of common sense that requires him to stop, look each way along the track and to listen, for an approaching train, before attempting to cross the track. The movement of trains must be regulated by the railroad companies in the exercise of a business discretion, and upon consideration of the competition they have to encounter and the necessities of modern business. We do not think a jury may fix the maximum rate of speed at which a train shall be moved in the open country, or that a high rate of speed is negligence per se. But while railroad companies may move their trains at such rate of speed as the character of their machinery and roadbed may make practicable, they must not forget that increased speed for the train means increased danger to those who must cross the tracks, and that increased care on their part to guard against accidents becomes a duty." In Newhard v. Pennsylvania R. R. Co., 153 Pa. 417, the plaintiff was driving a wagon over a grade crossing in an open country, and was injured by collision with one of the company's trains. The train was running over the crossing at the rate of fifty miles an hour. It was alleged that this was negligence and that the duty of the company was to slow up at the crossing, but we said : " Wherein did the defendant in any particular fail in duty ? It gave the signal of its approach to the crossing by the steam whistle ; this was a duty which the law imposed, and it was performed. But, it is argued, it was negligence in defendant to maintain the speed of fifty miles an hour in its approach to the crossing, for if it had ' slowed up ' the plaintiff could have cleared the crossing before the train reached it. The weakness of this argument is in the implied duty it imposes on the railroad company of conceding the superior right of the traveler to the crossing ; undoubtedly, when both are approaching the crossing at a rate

of speed which would put them on it at the same time, unless one or the other 'slows up' or stops, disaster to one or the other or both follows. If the train had given the proper warning signal to the traveler of its intention immediately for a very short space of time to occupy the crossing, the further duty of 'slowing up' or stopping until the traveler has safely passed is not by law imposed upon it; that duty is on the traveler. In passing over a street in a city, town or village, the circumstances being wholly different from a crossing in the country, ordinary care changes the duty, because these street crossings usually are at short intervals; the view of the traveler from the cross streets is obstructed by lines of buildings close to the track; while the sound of the whistle and the bell can be heard, it is difficult to determine their locality, or tell whether they come from an approaching or receding train. But the evidence here fails to show this crossing, so far as concerns danger, was in any material particular different from other crossings. The view at some points in the approach to it, as may be said of nearly all of them, is obstructed. Invariable human experience, however, as well as the evidence in the case, proves that the steam whistle of this coming train, in the open country, could be heard from a quarter to a half mile from where it was sounded. . . . The question of speed becomes material only when neither sight nor sound can avail the traveler to guard against danger."

The third, fifth, seventh and eighth assignments are sustained, and the judgment is reversed with a venire facias de novo.