## Craft, Appellant, *v.* Hines, Director General.

*Negligence—Railroads—Speed—Signals—Warnings — Negative evidence of plaintiff—Positive evidence of defendant—Case for court.*

1. Railroads operating their trains in the open country may move them at such rate of speed as the character of their machinery and roadbed may make practicable.

2. In operating trains in the open country, it is not the rate of speed at crossings that is the negligence of the company but the failure to give proper notice of the approach of the train.

3. In an action for death of a passenger on an automobile truck in a collision with a train at a crossing in the open country, the evidence of defendant's failure to give proper signals and warnings is insufficient to submit to the jury, where the testimony of the witnesses for plaintiff was all negative in character, being, in effect, that they did not hear any signals without showing that they were watchful or attentive for a signal, while numerous witnesses, both employees of defendants and others, testified positively that they heard the whistle blow and the bell ring.

Argued October 26, 1921.   Appeal, No. 102, Oct. T., 1921, by plaintiff, from judgment of C. P. Jefferson Co., Aug. T., 1919, No. 272, on verdict for defendant, in case of Lillie Craft v. Walker D. Hines, Director General of the United States Railroad Administration, operating the Buffalo, Rochester & Pittsburgh Railway Co. Before MOSCHZISKER, C. J., FRAZER, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Trespass for death of plaintiff's husband. Before CORBETT, P. J.

The opinion of the Supreme Court states the facts.

Directed verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was direction of verdict for defendant, quoting record.

*Charles J. Margiotti,* with him *Gillespie & Gillespie,* for appellant.—Defendant's negligence was for the jury: Howett v. R. R., 166 Pa. 607; Walbridge v. R. R., 190 Pa. 274; Greenfield v. Ry., 178 Pa. 194; Bickel v. R. R., 217 Pa. 456; Wanner v. R. R., 261 Pa. 273.

*W. C. Miller,* with him *John G. Whitmore, C. Z. Gordon* and *H. B. Hartswick,* for appellee.—Plaintiff offered no testimony to take this case to the jury as to whether or not warning of the approach of the train was given by whistle and bell. Its testimony was purely negative, and as against the positive testimony of defendant amounted to nothing: Moses v. Ry., 258 Pa. 537; Childs v. R. R., 150 Pa. 73; Schwartz v. R. R., 218 Pa. 187, 196; Jerdon v. P. Transit Co., 260 Pa. 275; Anspach v. Ry., 225 Pa. 528; Charles v. R. R., 245 Pa. 496; Leader v. Ry. 246 Pa. 452; Wind v. Steiert & Son, 71 Pa. Superior Ct. 194; Dryden v. R. R., 211 Pa. 620.

OPINION BY MR. JUSTICE SCHAFFER, January 3, 1922:

This is an action to recover damages for death at a grade crossing. The trial court gave binding instructions for defendant; plaintiff appeals.

About six o'clock in the afternoon of July 4, 1918, the day being clear, plaintiff's husband, who was a passenger for hire in an automobile truck, was killed in a collision between it and a locomotive, drawing a freight train, at a point where a public road, on which the truck was traveling, crosses at grade the tracks of the Buffalo,

Rochester & Pittsburgh Railroad.   It is admitted the truck did not stop before the attempt to cross the railroad tracks; the driver was heedless, and made the approach without in any way exercising the ordinary precautions due at a grade crossing.   The truck was an open one, without top, so far as the passengers, who were nine or ten in number, were concerned, the only covering being over the driver's seat; and plaintiff's decedent was seated in the open part, on a seat longitudinally placed, facing the direction from which the train which killed him came.

An interesting question arose, as to the effect of deceased's want of care, considering the reckless conduct of the driver; but that we are not called on to determine, because no negligence on defendant's part was shown.

The negligence charged in the statement, and attempted to be substantiated on the trial is, that the train was run at a dangerous rate of speed in approaching the grade crossing, and that there was a failure, on the part of those operating the train, to blow the whistle or sound the bell as the train approached the crossing, so as to give warning of its approach to persons on the highway, who might intend to cross the tracks.

The vital question in the case is that of warning of the approaching train.   The train was running in the open country, where railroad companies may move their trains at such rate of speed as the character of their machinery and roadbed may make practicable: Rapp v. Central Railroad of Penna., 269 Pa. 266; Schwarz v. Delaware, Lackawanna & Western R. R. Co., 218 Pa. 187.   Nothing as to the rate of speed of the train could safely be predicated on what was said by plaintiff's witnesses; they had not observed its approach, until it was almost upon them, and saw it only for the most fleeting space of time, in the wild excitement and fear, which would necessarily seize upon persons, in a truck filled with people, facing possible death or serious injury. The driver of the truck called by plaintiff said he could

only guess at the speed. A passenger seated alongside of him, whose testimony shows he was inattentive to his surroundings, saw the locomotive, first, when it was but ten feet from the crossing, and then only the front end of it; he was not permitted to express an opinion as to its speed, because it was manifest he could form no accurate judgment whatever on the question. Another witness, Drauker by name, was seated with his back to the approaching train and saw the engine first when it was, he thought, about 150 feet from the crossing; at sight of it, he said, he "was kind of stunned for awhile," and tried to force himself to another place in the truck, apparently to minimize his danger as much as possible. This was the only witness who estimated the speed, and he testified that in his opinion the train was going 40 miles an hour. It is apparent that no controlling finding of fact could be predicated upon this bit of testimony, when we consider that, according to the witness's own story, nature's first law, that of self-preservation, was dominating his mind. This was all the testimony there was as to speed on the part of plaintiff, except that it was testified by the conductor of the train that the train "was not supposed to go over 35 miles per hour," that this was "as fast as we are allowed to run." The engineer testified to a speed of 30 miles an hour at the time of the accident. There was no reliable evidence in the case to show negligent speed, even if it could be assumed that, under the circumstances, 40 miles an hour was such.

As we said in the Schwarz Case (218 Pa. 187) ; "It is not the rate of speed that prevents a traveler from passing safely over a railroad crossing in an open country, but the failure to give notice of the approach of the train by those in charge of it, or disregard of such notice by the traveler when given......It is not the rate of speed that is the negligence of the company, but the failure to give proper notice of the approach of the train."

This brings us to the critical inquiry in the case, on the angle from which we are considering it.  Was warning given of the approach of the train?  To answer this inquiry, we have read all the testimony with painstaking care.  The witnesses called by plaintiff to show that no warning was given, were the driver of the truck, the passenger seated on the front seat alongside of him, and another passenger, Drauker, who was seated in the body of the vehicle.  The testimony of all three of them was negative,—that they did not hear,—and not one of them supplied the element of watchfulness and attention for a signal, necessary to meet defendant's positive proofs, in this regard.  All agreed that the truck was ascending an incline to the tracks in second gear, at a speed of about 3 miles an hour and that the truck was making a noise.  It was undisputed that, from a point 35 feet from the track, there was an unobstructed view of the train, in the direction from which it came, of from 400 to 450 feet.  The driver testified, in answer to a query as to whether notice was given by either bell or whistle, that "the bell could have been ringing," but if the whistle had been blown "as [the train] rounded onto the crossing on the right-hand curve, I would have heard it"; the spot indicated was not the place fixed for the blowing of the whistle, however,—it was to be blown at a whistling post farther away.  This witness categorically admitted, "I didn't stop, look and listen," and he, himself, differentiated between a positive assertion that the bell did not ring, and the negative one that he did not hear it, by saying, after stating that he heard no bell, that "It could have been possibly, there is a chance of it being ringing."  Again, when answering the direct inquiry whether he would say the bell was not ringing, the witness said, "No."  As to sounding the whistle, his testimony was entirely negative; he repeated the statement quoted, that the whistle was not blown, as the train came around the curve, and qualified this by saying that he meant "just as you come on the crossing."

Then he confined the distance of the train from the crossing, within which he would say the whistle was not blown, to 150 feet. In answer to the question, whether he would pretend to say the whistle was not blown at the whistling post, he admitted he would not say it was not blown there, and that he knew it was the regular place for the engineer to sound the whistle. The passenger, seated alongside him, in answer to the question whether the engine gave any warning as it approached the crossing, replied, "None that I heard."

The witness Drauker, sitting with his back in the direction from which the train approached, testified there were no signals given by the locomotive as it approached the crossing, but he based this statement on the fact that he did not hear them. Answering the question, "Do you know whether the whistle was blown down at the whistle post," he replied, "I don't know whether it was or not—I didn't hear it." This answer speaks for itself, so far as the legal rule regarding negative testimony is concerned, and shows that, on the critical question as to whether the whistle was blown where it was the duty to sound it, he was ignorant.

Against this negative and unsatisfying testimony, defendant produced evidence to show, by the engineer of the train, that he gave notice of the approach to the crossing by blowing the customary crossing approach signal, two long and two short blasts, at the place fixed for blowing it for the crossing in question; that the engine was provided with an automatic bell ringing device, which he turned on when he blew the whistle; that the bell commenced ringing and rang until after the train passed the crossing. The fireman, in corroboration of the engineer, as to the blowing of the whistle and ringing of the bell, testified that he shut the bell off, after the train stopped, following the accident, that he heard it ringing all the time, and that the reason why he, and not the engineer, turned the bell off was, because, when the train stopped, the engineer ran back to the

point of the accident, leaving the bell ringing.   The conductor also testified the bell continued to ring after the train had stopped, and this fact was further corroborated by a witness who was driving an automobile in the road behind the truck in which deceased was riding, who likewise testified that the bell continued to ring after the train stopped.

An important witness in the case, Paul Pantall, said he was coming toward the crossing from the opposite side from that on which the truck approached.   He heard the train whistle as it was coming up behind him, looked out the side of his automobile, saw the train, stopped his automobile, and, after stopping, saw the truck in the road on the other side of the tracks approaching the crossing.   He had the truck in view from the time he first saw it; seeing the driver change gears to make the ascent of the grade to the crossing, he screamed and halloed, and motioned to attract the attention of its occupants, but they were oblivious to his outcries.   Another witness, Frank Bernardo, who lived about 300 feet from the crossing and who witnessed the accident, said he heard the train whistle for the crossing, and, at the time he heard the whistle, saw the automobile in the road approaching the tracks.   Another witness, Lovejoy by name, who was waiting at the crossing to take a train going in the other direction, testified that he heard the train in question whistle, and, turning to look along the road, saw the truck in the road approaching the crossing about 180 feet distant.   The witness Hazlett, whose testimony has been referred to heretofore, and who was driving in the road, behind the truck, testified that he heard the train whistle, with the truck in the road ahead of him, and, as has been stated, that he heard the bell ringing, after the train stopped.   His wife, who accompanied him in the automobile, also said she heard the whistle.

In the light of this positive testimony produced by the defendant, no verdict could be permitted to stand in

Opinion of the Court.                    [272 Pa.

plaintiff's favor, which was based on the negative and unsatisfactory evidence produced in her behalf, to establish negligence by a failure to give notice of the approach of the train: Anspach v. Phila. & Reading Ry. Co., 225 Pa. 528; Charles v. Lehigh Valley R. R. Co., 245 Pa. 496; Leader v. Northern Central Ry. Co., 246 Pa. 452; Rapp v. Central Railroad of Penna., 269 Pa. 266.

The judgment is affirmed.