Ealy et ux., Appellants, *v.* New York Central
Railroad Company.

Argued November 30, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Samuel H. Jubelirer,* with him *G. Harry Isaacson,* for appellants.

*Cortez Bell,* of *Bell & Silberblatt,* with him *Frank J. Hartman,* for appellee.

OPINION BY MR. JUSTICE BARNES, March 22, 1939:

The plaintiffs, husband and wife, accompanied by their daughter, started from their home in Barnesboro, Cambria County, about ten-thirty o'clock on the morning of June 10, 1935, to drive in their automobile to Atlantic City. The husband was operating the car, his wife was seated next to him, and the daughter was beside her mother, all on the single seat of their coupé type automobile. The day was clear, the road was dry, and both windows of the automobile were open.

They proceeded upon Highway Route No. 219 in the direction of Carrolltown. When they had traveled about four miles from their home, they came to the railroad crossing east of Spangler, near the village of St. Bene-

dict, where a single track branch of defendant company intersects the highway at grade. The railroad track is on an up-grade, and while its general direction is north and south, it curves in an arc to the west across the highway. The road extends east and west, and also approaches the crossing on an up-grade, beginning about 450 feet west of the track, increasing in gradient as the crossing is reached. It is of concrete construction, 16 feet in width, with a macadam berm on both sides of the road. Standard railroad warning signs are located near the track.

At the trial the husband testified that he was familiar with this crossing, having driven over it two days before the accident, as well as upon numerous other occasions; that on the day in question he began to decrease the speed of his car when he was 300 feet from the track, so that he approached it at 10 miles an hour, shifted into second gear when 12 feet away, and came to a full stop when the bumper of his car was 4 feet from the near rail. Here, according to his testimony, he could see to the right along the track a distance of approximately 50 feet. He looked in both directions, and listened, but neither saw nor heard the approaching train.[1] He then drove upon the track in low gear, but before the front wheels of his car reached the second rail, the train came into view upon his right, not more than 25 feet away. He swerved to the left of the crossing to avoid the collision, but the automobile was struck almost instantly

---

[1] The husband-plaintiff describes the accident as follows: "I stopped, looked to the left, and looked to the right, and listened . . . I saw nothing to the left, nothing to the right, and I heard nothing. I moved my car at two or three miles an hour, started across; I got my front wheels about midway between the two rails. I heard a noise on my right; I quickly looked around, and there was an engine approaching me at a rapid speed within twenty-five feet. . . . I was very much excited naturally, and I gave my car all the gas I could, and threw clear to the left side of the road, and in an instant it got me right at the door."

upon the right side, and carried a distance of 180 feet up the track. Both plaintiffs were seriously injured, and their automobile was demolished.

Plaintiffs assert that they were unable to see the oncoming train because their view of the track in the direction from which it approached was obscured by a thick growth of bushes and trees; that they did not hear the whistle or bell sounded by the engine to give warning as it drew near the crossing. Testimony to the same effect was given by their daughter, and by three other witnesses who were within 800 feet of the place where the accident occurred. However, five members of the train crew, and eighteen other witnesses testified that they heard warning signals given by whistle and bell before the train reached the crossing. There was also a conflict in the testimony as to the speed of the train, the plaintiffs claiming that it was 40 or 45 miles an hour at the time of the accident, while defendant's witnesses stated that it did not exceed 15 miles an hour.

On behalf of defendant it was contended at trial that the evidence was not sufficient to support a finding that it was negligent. It moved for a compulsory nonsuit upon this ground, which was denied by the court. The questions of defendant's negligence and of plaintiffs' contributory negligence were submitted to the jury after a point for binding instructions in favor of defendant was refused. The jury was unable to agree upon a verdict and was finally discharged. Thereupon a motion for judgment upon the whole record was made by defendant, which was granted by the court in banc. Plaintiffs have appealed from the judgment so entered.

The court below reached the conclusion that plaintiffs were barred from recovery because of their contributory negligence; also that the motion for a compulsory nonsuit should have been sustained for the reason that plaintiffs' testimony relating to the accident lacked probative force,—in effect that it was incredible: *Marach v. Kooistra*, 329 Pa. 324.

It seems to us, however, that the primary question for consideration is whether the record discloses such evidence of negligence on the part of defendant to justify the submission of the case to the jury. The burden of proving negligence is upon him who asserts it, and more is required than mere proof of the happening of an accident.

Plaintiffs rely principally upon two grounds in support of their charge of negligence: (1) that at the time of the accident the train was operated at an excessive rate of speed; (2) that no whistle was blown or bell sounded to give warning of the approach of the train.

While the evidence is conflicting concerning the speed of the train, it is well settled that before a jury may consider whether a particular rate of speed constitutes negligence, there must be evidence of special circumstances that renders such speed excessive. A high rate of speed, even at public crossings, is not negligence per se, and no inference of negligence may be drawn from the fact alone of the rapid movement of a railroad train. *Childs v. Penna. R. R. Co.*, 150 Pa. 73; *Custer v. Railroad*, 206 Pa. 529; *Schwarz v. Railroad*, 218 Pa. 187; *Craft v. Hines, Dir. General*, 272 Pa. 499; *Kelly v. Director Gen. of R. R.*, 274 Pa. 470; *Grimes v. Penna. R. R. Co.*, 289 Pa. 320; *Haller v. Penna. R. R. Co.*, 306 Pa. 98. As we said in *Kelly v. Director Gen. of R. R.*, supra, (p. 475) : "With respect to defendant's negligence there was evidence on part of plaintiff that defendant's train approached the crossing at the rate of sixty miles an hour. This fact alone would not warrant an inference of negligence. The crossing was in the country district where the rule has been applied that there is no limit to the rate of speed at which a railroad may run its trains so long as the bounds of safety to patrons are not transgressed: *Custer v. Railroad*, 206 Pa. 529, 533; *Schwarz v. R. R.*, 218 Pa. 187, 196."

The contention of plaintiffs is that the general contour of the land adjacent to the crossing and the obstruc-

tion of the view along the curved track by the growth of trees and shrubbery made the place so dangerous that defendant, in the exercise of care, should have reduced the speed of its train when approaching it. However, the crossing is in the open country, and there is no evidence of any special conditions existing there which made necessary a reduction in speed of the train. Plaintiffs were familiar with the crossing, having passed over it many times. They testified that they did not see the train until it was within 25 feet of them, yet they estimated its speed at approximately 40 to 45 miles an hour within the fleeting seconds before it was upon them.[2] This testimony cannot possibly be made the basis of a finding of negligence. Under like circumstances we said in *Craft v. Hines, Dir. General,* supra, (p. 501): "Nothing as to the rate of speed of the train could safely be predicated on what was said by plaintiff's witnesses; they had not observed its approach, until it was almost upon them." And again, (p. 502): "It is apparent that no controlling finding of fact could be predicated upon this bit of testimony, when we consider that, according to the witnesses's own story, nature's first law, that of self-preservation, was dominating his mind."

It is not the rate of speed which constitutes negligence of the railroad company in cases such as the present one. The crucial fact is whether proper warning of the approach of the train was given: *Craft v. Hines, Dir. General,* supra; *Kelly v. Director Gen. of R. R.,* supra. To establish the failure of defendant to perform this duty the plaintiffs, in addition to their own and the daughter's testimony, produced three witnesses, Samuel Miller,

---

[2] In ruling upon an objection made at trial to the daughter's testimony as to the speed of the train, the trial judge said: "The jury must take into account all the circumstances, and the limited space within which that estimate could be formed—an oncoming train twenty-five feet away, it would be next to impossible to accurately, or anywhere near accurately estimate that speed."

Samuel Lantzy, and Mrs. Amelia Gray, who said that they did not hear the whistle blown nor the bell sounded by the train. This is negative testimony, and the record does not disclose that any of these witnesses was sufficiently attentive or in a position to hear a warning signal if it had been given.

The daughter Lucille, when asked "did you hear anything that gave you warning of the approach of a train or any vehicle," replied, "nothing at all." This also is negative testimony. The husband testified that "I saw nothing to the left, nothing to the right, and I heard nothing." This testimony as to warning is negative. In considering all this evidence the court below was of opinion that it was negative with one exception,—that of the wife-plaintiff. Her testimony was as follows: "Q. Did you see the train approaching before you got on the track? A. I didn't. Q. Did you hear the train? A. I didn't. Q. Did you have any warning of any kind the train was approaching? A. Did not." It is apparent that this testimony is likewise negative in character, and cannot be accepted, standing alone, as proof of the essential fact that no warning was given. It does not amount to more than a scintilla of evidence upon this vital issue of the case.

The engineer of the train, John Bowes, stated positively that warning signals consisting of two long and two short blasts of the whistle were given when the train was approximately 500 feet from the crossing, and the ringing of the bell was started at the same time and continued until the crossing was passed. The fireman, the conductor and the brakeman of the train corroborated this testimony. Eighteen other witnesses, who were apparently disinterested, gave positive evidence as to the blowing of the whistle and the ringing of the bell, substantially to the same effect as the testimony of the train crew.

What we said, speaking by Mr. Justice SCHAFFER, in *Craft v. Hines, Dir. General,* supra, is decisive of the

question here involved (p. 505) : "In the light of this positive testimony produced by defendant, no verdict could be permitted to stand in plaintiff's favor, which was based on the negative and unsatisfactory evidence produced in her behalf, to establish negligence by a failure to give notice of the approach of the train: *Anspach v. Phila. & Reading Ry. Co.*, 225 Pa. 528; *Charles v. Lehigh Valley R. R. Co.*, 245 Pa. 496; *Leader v. Northern Central Ry. Co.*, 246 Pa. 452; *Rapp v. Central Railroad of Penna.*, 269 Pa. 266."[3]

Since it is our conclusion that the evidence is insufficient to establish any lack of care by defendant company, it would serve no useful purpose to discuss the question of contributory negligence. The judgment in favor of defendant must be sustained, but upon the ground that plaintiffs failed to prove negligence. It follows that the case should not have been submitted to the jury.

Judgment affirmed.

Mr. Chief Justice KEPHART took no part in the decision of this case.

---

[3] See also *Urias v. Penna. R. R. Co.*, 152 Pa. 326; *Winterbottom v. Phila. Ry. Co.*, 217 Pa. 574; *Zotter v. Lehigh Valley R. R. Co.*, 280 Pa. 14; *Miller v. Penna. R. R. Co.*, 299 Pa. 63.