CHARLES H. JUDSON, Appellant, *v.* THE CENTRAL VERMONT RAILROAD COMPANY, Respondent.

1. SUPREME COURT — POWER OF APPELLATE DIVISION TO AMEND GENERAL TERM ORDER OF REVERSAL. The Appellate Division of the Supreme Court has jurisdiction to so amend, in accordance with the facts, an order of reversal made by the late General Term of that court as to render the decision of the General Term reviewable by the Court of Appeals.

2. APPEAL — SUFFICIENCY OF STATEMENT IN ORDER OF REVERSAL TO AUTHORIZE REVIEW. In an order of the General Term reversing, upon the law only, a judgment entered on a verdict, and an order denying a motion for a new trial which raised the question whether the verdict was against the weight of evidence, a statement that the court "examined the facts and found no error therein" is sufficient to authorize a review of the decision of the General Term.

3. NEGLIGENCE — DEGREE OF CARE REQUIRED IN APPROACHING RAILROAD CROSSING. A person approaching a railroad crossing is not bound to exercise the greatest diligence, but only such as a prudent man approaching such a place would ordinarily exercise under the circumstances.

4. STOPPING BEFORE CROSSING NOT REQUIRED AS MATTER OF LAW.   A person approaching a railroad crossing is not required, as matter of law, to stop before attempting to cross; but his omission to do so is a fact for the consideration of the jury.

*Judson* v. *C. V. R. R. Co.,* 91 Hun, 1, reversed.

(Argued March 9, 1899;   decided April 18, 1899.)

APPEAL from an order of the late General Term of the Supreme Court in the third judicial department, entered December 10, 1895, reversing a judgment in favor of plaintiff entered upon a verdict, and an order denying the defendant's motion for a new trial, and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*C. A. Kellogg* for appellant.   The negligence of the defendant was properly submitted to, and decided by, the jury. (*Kellogg* v. *N. Y. C. & H. R. R. R. Co.,* 79 N. Y. 72; *Byrne* v. *N. Y. C. & H. R. R. R. Co.,* 104 N. Y. 363; *Barry* v. *N. Y. C. & H. R. R. R. Co.,* 92 N. Y. 289; *Lindeman* v. *N. Y. C. & H. R. R. R. Co.,* 42 Hun, 306; *Maginnis* v. *N. Y. C. & H. R. R. R. Co.,* 52 N. Y. 215; *Ernest* v. *H. R. R. R. Co.,* 35 N. Y. 9.)   Plaintiff was not guilty of contributory negligence.   (*Beckwith* v. *N. Y. C. & H. R. R. R. Co.,* 54 Hun, 449; *Windsow* v. *B. & A. R. R. Co.,* 11 N. Y. S. R. 813; *Kellogg* v. *N. Y. C. & H. R. R. R. Co.,* 79 N. Y. 72; *Shaw* v. *Jewett,* 86 N. Y. 616; *Parsons* v. *N. Y. C. & H. R. R. R. Co.,* 113 N. Y. 356; *Wilbur* v. *D., L. & W. R. R. Co.,* 85 Hun, 155; *McNamara* v. *N. Y. C. & H. R. R. R. Co.,* 136 N. Y. 652; *Greany* v. *L. I. R. R. Co.,* 101 N. Y. 420; *Seeley* v. *N. Y. C. & H. R. R. R. Co.,* 8 App. Div. 406; *Miller* v. *N. Y. C. & H. R. R. R. Co.,* 82 Hun, 164; 146 N. Y. 367.)

*Louis Hasbrouck* for respondent.   The order of the General Term reversing the judgment and the order denying the motion to grant a new trial is not appealable to this court. (*Courtney* v. *Baker,* 60 N. Y. 1; *Harris* v. *Burdett,* 73 N.

Y. 136; *Snebley* v. *Conner*, 78 N. Y. 218; *Kennicutt* v. *Parmalee*, 109 N. Y. 650; *Williams* v. *D., L. & W. R. R. Co.*, 127 N. Y. 643; *Chapman* v. *Comstock*, 134 N. Y. 509; *Mickee* v. *W. M. & R. M. Co.*, 144 N. Y. 613; *Hoes* v. *E. G. E. Co.*, 150 N. Y. 87; *Henavie* v. *N. Y. C. & H. R. R. R. Co.*, 154 N. Y. 278.)   The plaintiff was clearly guilty of such contributory negligence as to bar his recovery. (*Woodard* v. *N. Y., L. E. & W. R. R. Co.*, 106 N. Y. 369; *Young* v. *N. Y., L. E. & W. R. R. Co.*, 107 N. Y. 500; *Cullen* v. *D. & H. C. Co.*, 113 N. Y. 667; *Tucker* v. *N. Y. C. & H. R. R. R. Co.*, 124 N. Y. 308; *Daniels* v. *S. I. R. T. Co.*, 125 N. Y. 407; *Nash* v. *N. Y. C. & H. R. R. R. Co.*, 125 N. Y. 715; *Fowler* v. *N. Y. C. & H. R. R. R. Co.*, 74 Hun, 141; *Albert* v. *N. Y. C. & H. R. R. R. Co.*, 80 Hun, 155; *Bates* v. *N. Y. C. & H. R. R. R. Co.*, 84 Hun, 287; *Shires* v. *F., J. & G. R. R. Co.*, 80 Hun, 92.)   The evidence failed to show that the defendant was guilty of negligence. (*Francisco* v. *T. & L. R. R. Co.*, 78 Hun, 13; *Culhane* v. *N. Y. C. & H. R. R. R. Co.*, 60 N. Y. 134; *McKeever* v. *N. Y. C. & H. R. R. R. Co.*, 88 N. Y. 667; *Stitt* v. *Huidekepers*, 17 Wall. 384; *Rainey* v. *N. Y. C. & H. R. R. R. Co.*, 68 Hun, 496.)

Martin, J.   Before reaching the merits of this appeal we are confronted with the question whether the record before us is sufficient to authorize this court to examine and determine the questions of law involved in the decision of the General Term.

At the close of the plaintiff's evidence the defendant moved for a nonsuit upon the grounds that the plaintiff had failed to show his freedom from contributory negligence and had not established the negligence of the defendant.   This motion was denied and the defendant excepted.   When the testimony was closed the defendant renewed its motion upon substantially the same grounds and the same ruling, and an exception followed.   The case was then submitted to the jury, which found for the plaintiff.   The defendant thereupon moved,

upon the minutes of the court, to set aside the verdict and for a new trial upon the exceptions and upon the ground that the verdict was excessive and contrary to the evidence. That motion was denied and an exception taken. The defendant subsequently appealed to the General Term of the Supreme Court in the third department from the judgment and the order denying its motion for a new trial, where they were reversed and a new trial granted.

The order of the General Term omitted to state the grounds upon which the reversal was based, so that as it then stood we would have had no power to entertain this appeal. (*Chapman* v. *Comstock*, 134 N. Y. 509; *Mickee* v. *W. M. & R. M. Co.*, 144 N. Y. 613; *Hoes* v. *Edison General Electric Co.*, 150 N. Y. 87; *Henavie* v. *N. Y. C. & H. R. R. R. Co.*, 154 N. Y. 278.) That order was made at the December term, 1895. Subsequently, and in 1896, the plaintiff applied to the Appellate Division of the same court in the same department for, and obtained an order amending the order of reversal *nunc pro tunc*, so as to provide that the judgment and order denying the motion for a new trial " be and each of them hereby is reversed upon questions of law only, the court having examined the facts and found no error therein, and a new trial ordered, with costs to abide the event." Thus, two questions arise as to the practice or procedure adopted in this case: 1. Whether the Appellate Division had jurisdiction to grant the order amending the order of the General Term. 2. Whether the order as amended was sufficient to authorize the Court of Appeals to review the decision of that court.

The Constitution as amended in 1894, which went into effect January 1, 1895, declares : " From and after the last day of December, one thousand eight hundred and ninety-five, the Appellate Division shall have the jurisdiction now exercised by the Supreme Court at its General Terms, * * * and such additional jurisdiction as may be conferred by the legislature." (Const. art. 6, § 2.) The statute is to the same effect. (Code of Civil Procedure, § 190.)

In *Hopkins* v. *Clark* (149 N. Y. 329, 331) these provisions

of the Constitution and statute were under consideration so far as they related to the General Term of the New York Court of Common Pleas, and it was there held that the Appellate Division in the first department had jurisdiction to grant a motion for, and to hear a reargument of, an appeal decided by that court. In delivering the opinion in that case Judge HAIGHT said: "The General Term of the Court of Common Pleas during its existence had jurisdiction to order and hear a reargument. The jurisdiction exercised by it is now by express terms vested in the Appellate Division, and it may now make all the orders, judgments and decrees that formerly could have been made by that court."

The principle of that case is decisive of the question under consideration. We have no doubt that the Appellate Division had jurisdiction to make any order which could have been properly made by the General Term. It having had jurisdiction to make the amendatory order and there having been no appeal therefrom, it must be regarded as valid and controlling in this case. Any other construction of these provisions of the Constitution and statute would result in confusion, and in many cases in great hardship to parties. In this case, unless the Appellate Division had jurisdiction to make this order, the plaintiff's right to review the judgment of the General Term would be very seriously impaired, as the order of that court reversing the plaintiff's judgment was made at the last term held by it, and presumptively the plaintiff had no opportunity to apply to it for a modification of the order before the court had gone out of existence.

The remaining question upon this branch of the case is whether the order as amended is sufficient to authorize a review of the decision of the General Term. The principle upon which the cases first cited are based is that where an order simply discloses that the reversal was upon the law, there is nothing to show that the question whether the verdict was against the weight of evidence was passed upon, and if this court should reverse the decision of the General Term the respondent would have a judgment against it without hav-

76

ing the question as to the weight or sufficiency of the evidence considered. So that the precise point to be determined is whether the. order in this case shows that that question was considered by the General Term. It, in effect, declares that the court examined the. facts and found no error therein. This necessarily included the questions of the sufficiency of the evidence and whether the verdict was against its weight, and was equivalent to determining that the order should be affirmed upon the facts and reversed upon questions of law only, and, hence, was sufficient within the principle of the cited authorities.

Thus, we are brought to the consideration of the merits of this appeal. The action was to recover damages for personal injuries occasioned by a collision between a wagon upon which the plaintiff was riding and a train of freight cars upon a railroad operated by the defendant. The accident occurred on the evening of November 2, 1893, at about half-past six o'clock. The plaintiff attempted to drive across the defendant's track at the Main street crossing in the village of Norwood, N. Y. The railroad runs through the village in an easterly and westerly direction. Main is the principal street in the village, and crosses the defendant's track substantially at right angles. While only one of its tracks extends across the street, yet, upon either side, there are other tracks employed by the defendant for yard and switching purposes. It was dark when the accident occurred. The plaintiff started from a point in Main street about two hundred feet south of the crossing and approached it with his horses upon a slow trot. There was no box upon the wagon, but there was a platform composed of planks laid upon bolsters, upon which the plaintiff sat sidewise facing towards the west. His back was partially towards the east, so that he had to turn his head to look in that direction. There were buildings on both sides of the street to within forty feet of the track, and, consequently, the plaintiff could not see up or down the railroad until he reached a point where his view was unobstructed by the buildings. He was listening, as he approached, and thought

he heard the whistle of a train coming from the west. He continued to listen, and as soon as he reached a point where he could see the tracks, he looked in both directions. On the west he saw an engine about one hundred and fifty feet from the crossing, with its headlight facing it. On the east he could discover no moving train, but saw lights, the nearest of which was about twenty-five rods distant. Satisfying himself that no train was approaching, he made no stop. When he again looked east his horses were upon the rails, and he then saw the rear end of a moving freight car near the crossing. He struck his horses, a collision followed, and he was thrown from the wagon and seriously injured. There were no lights on the rear of the car, although it was attached to a train that was backing across the street at the rate of ten or twelve miles an hour, which consisted of twenty-one freight cars, and was seven hundred and thirty-five feet in length. There was no flagman at the crossing. The testimony of two witnesses disclosed that, about the time of the accident, they were walking upon the track, in an easterly direction, but did not see or hear this train until it nearly reached them. One testified that he was able to see the car only when about six or seven feet away. The street was smooth, and the wagon made little noise. The plaintiff was familiar with the railroad crossing at that place, having lived near there for about thirty years. While in many respects there was a sharp conflict in the evidence, still, it was sufficient to justify the jury in finding the facts as stated.

From the foregoing review of the evidence, it is manifest that it was abundant to authorize the submission of the question of the defendant's negligence to the jury, and to sustain its verdict. Indeed, the record discloses that such was the opinion of the General Term. The only ground upon which the reversal by that court was based, was that the plaintiff, as a matter of law, was guilty of negligence which contributed to his injury. The correctness of that determination is now challenged by the plaintiff, and presents practically the only question that need be determined upon this branch of the case.

The trial court submitted that question to the jury which determined it in the plaintiff's favor. In its submission the court instructed the jury as follows: "If it was necessary for him (the plaintiff) to stop at that crossing in order to get a fair and full observation of any approaching danger, he ought to have stopped. If it was necessary for him to stop to exercise due prudence at that particular time and place, it was his duty to stop and use both his sight and his hearing to prevent any possible injury. I do not charge you as a question of law that it was his duty to stop under the circumstances; that is for you to say. If he was going along at the rate of five or six miles an hour and he had full control of his horses, and he was sitting in a position so he could turn his head and see both ways, and he was listening and attentive, and there was apparently nothing whatever within striking distance of him to harm him, you are at liberty to find that he had a right to cross that track without stopping his horses, otherwise not." If the question whether it was the duty of the plaintiff to stop his team before crossing the track was one of fact, it is obvious that it was fairly and properly submitted. The difference between the views of the trial court and the General Term was, that the former regarded the question whether it was the duty of the plaintiff, under the circumstances disclosed by the evidence, to stop before crossing the defendant's track, as a question of fact, while the General Term entertained the view that, as a matter of law, it was his duty to stop his team before crossing. An examination of the record discloses that no other precaution was omitted which the plaintiff could have taken or was required to adopt, so that the question of law presented is whether a person approaching a railroad track is, as a matter of law, required to stop before attempting to cross. We think the question is not an open one in this court. (*Davis* v. *N. Y. C. & H. R. R. R. Co.*, 47 N. Y. 400; *Dolan* v. *D. & H. C. Co.*, 71 N. Y. 285; *Kellogg* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 72; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 464, 467.)

In the *Davis* case this court held that while a traveler upon a highway, in approaching a railroad crossing, is required to make vigilant use of his eyes and ears to ascertain the presence of a train, and if by such use of these faculties it may be discovered in time to avoid a collision, the omission to exercise them is contributory negligence and will bar a recovery, but that he is not required to stop, or, if he is with a team, to get out and leave his vehicle and go upon the track, or to stand up and go upon the track in that position in order to obtain a better view.

In the *Dolan* case the court held that a person approaching a railroad crossing is negligent, as a matter of law, unless he employs his senses of hearing and sight to avoid danger, but that beyond that courts cannot go without usurping the province of a jury. It was there in effect said that, even conceding that common prudence requires unusual diligence, the absence of its exercise cannot be held, as a matter of law, to be negligence, because, under such circumstances, the question involves the consideration of many facts and circumstances from which inferences are to be drawn which is within the province of the jury and not the court, and that the question whether exceptional circumstances are such as require additional and unusual precautions necessarily calls for inferences and the exercise of judgment as to which impartial men might differ, and, hence, must be determined by the jury.

So in *Kellogg* v. *N. Y. C. & H. R. R. R. Co.* it was distinctly held that it is not, as a matter of law, negligence for a person approaching a railroad in a carriage upon a highway to fail to stop, but that his omission to do so is a fact to be submitted to the jury. The duties which rest upon a traveler attempting to cross a railroad are there stated, and it was in effect said that he is not bound to exercise the greatest diligence, but only such as a prudent man approaching such a place would ordinarily exercise, and that even where he could probably have avoided the accident by stopping, he is not, as a matter of law, required to do so, and that the courts of this state have so held; but if he ought to stop and he omits it, it

is a fact to be submitted to the jury with the other facts in the case bearing upon that question.

In the *Staqkus* case CHURCH, Ch. J., again stated the rule applicable to this question in these words : " In this state it has been settled that a person desiring to cross a railroad track must exercise his senses of seeing and hearing to avoid danger, and an omission to do this has frequently been adjudged, as matter of law, negligence. The traveler must look both ways, and listen for the approach of trains. He is not obliged, however, as matter of law, to stop his team, to rise up in his wagon, or to get out and go to the track to make observations. Whether he ought to do any or all of these things in a given case, in order to relieve himself from the charge of negligence, is for the jury to decide in view of the circumstances developed."

The same rule exists in the courts of nearly all the other states of the Union and in the United States courts. (*Hixson* v. *St. Louis, H. & K. R. R. Co.*, 80 Mo. 335 ; *Duffy* v. *C. & N. W. R. R. Co.*, 32 Wis. 269 ; *Bunting* v. *Central Pacific R. R. Co.*, 14 Nevada, 351 ; *L., L. & G. R. R. Co.* v. *Rice*, 10 Kan. 426 ; *Spencer* v. *Illinois C. R. R. Co.*, 29 Iowa, 55 ; *H. & T. C. R. R. Co.* v. *Wilson*, 60 Texas, 142 ; *Alexander* v. *R. & D. R. R. Co.*, 112 N. C. 720 ; *Wright* v. *Cincinnati, etc., R. R. Co.*, 94 Ky. 114 ; *Beanstrom* v. *N. P. R. R. Co.*, 46 Minn. 193 ; *Ladouceur* v. *N. P. R. R. Co.*, 6 Wash. St. 280 ; *Continental Imp. Co.* v. *Stead*, 95 U. S. 161.) The only exception we find is in Pennsylvania, where the opposite rule seems to be firmly established. (*Penn. R. R. Co.* v. *Beale*, 73 Penn. St. 504 ; *Reading, etc., R. R. Co.* v. *Ritchie*, 102 Penn. St. 425.)

Manifestly the learned General Term entertained an erroneous opinion as to the duty imposed upon a person approaching a railroad crossing, as it plainly stated that the plaintiff was charged with more than an ordinary degree of care in approaching and crossing this track to avoid fatal consequences to himself, as well as injury and hazard to the company, and that it was his duty on approaching it to do everything in his power

to avoid the collision, including the duty to stop and then look and listen. This view of the law is in conflict with the previous decisions of this court. As we have already seen, the plaintiff was not bound to the greatest degree of diligence which he could have exercised, but to exercise only such care as a prudent man approaching such a place would. We think that the learned General Term erred in holding that the plaintiff was bound to exercise the greatest diligence and to stop his team before crossing the track, and that its reversal upon that ground cannot be sustained.

Our attention is called to other exceptions taken upon the trial, all of which have been examined without finding any which justified the reversal by the court below.

The judgment and order of the General Term should be reversed, and the judgment entered upon the verdict affirmed, with costs in all the courts.

All concur, except GRAY and O'BRIEN, JJ., dissenting.

Judgment accordingly.