GRIMSLEY v. NORTHERN PAC. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. May 1, 1911.)

No. 3,476.

RAILROADS (§ 328*)—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE.

Plaintiff's husband, while driving across the main track of defendant's railroad at a street crossing in a village, was struck and killed by a mail train, running at a speed of about 40 miles an hour, which did not stop at such station. Deceased had been driving along a parallel street, from which his view of the railroad was somewhat obstructed; but after turning upon the crossing street, and crossing a passing track, 45 feet from the main track, he had a clear view along the main track in the direction from which the train approached for several hundred feet, obstructed only occasionally by the smoke and steam from an engine standing on the passing track. He did not stop to look or listen after crossing the passing track. Held, that his failure to do so constituted contributory negligence as matter of law, which precluded a recovery for his death.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1057–1070; Dec. Dig. § 328.*]

In Error to the Circuit Court of the United States for the District of North Dakota.

Action at law by Elizabeth Grimsley against the Northern Pacific Railway Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Arthur L. Knauf (John Knauf, on the brief), for plaintiff in error.

C. W. Bunn and Ball, Watson, Young & Lawrence, for defendant in error.

Before HOOK, Circuit Judge, and RINER and REED, District Judges.

REED, District Judge. The plaintiff sued the railway company for damages for causing the death of her husband, James F. Grimsley, upon Main street in the village of Medina, N. D., where the railroad crosses it, practically at right angles; the street running north and south. About noon of January 3, 1910, Mr. Grimsley drove a team of horses hitched to a pair of bob sleighs, upon which was an ordinary wagon box, in which he rode, into the village from a northeasterly direction, and onto a street next north of and parallel, or nearly so, with the railroad; thence along said street to Main street, where he turned south and drove across a passing track, and started to cross the main track, some 45 feet south of it. North of the passing track and east of Main street is a track called the "elevator track," upon the north side of which a grain elevator and perhaps some warehouses are built. East of and close to Main street this elevator track joins the passing track. At the time of the accident a west-bound freight train, consisting of an engine and a number of box cars, was standing upon the side track, with the front of the engine close to or partly upon the switch which connects the elevator and passing tracks, so that only two of the tracks, viz., the main and passing tracks, about 45 feet apart, cross the street north of the depot, which is a block east of Main street.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

South of the depot is another side track, but its location is not material to the determination of the question before us. The engine was emitting smoke, and steam was escaping from it. North of the elevator track, and south of the street along which Grimsley drove to Main street, was a snow fence, which, with the elevator and box cars and the smoke and steam from the engine, obscured to some extent the view of the railroad tracks easterly from the Main street crossing for some 300 or 400 feet. As Grimsley neared the passing track, he met a Mr. Wellhauser, not an employé of the railway company, who was going north. They passed the time of day, and Grimsley, without stopping his team, said to Wellhauser, "Do you suppose it is safe to pass?" Wellhauser answered, "I guess so." He also said that as Grimsley passed the engine he "raised up and looked to the east," and that as he (Wellhauser) crossed the tracks he looked to the east, but could not then see the railroad east of the engine because of the steam and smoke from it, and that the escaping steam made a "hissing noise." The day was clear and cold, the temperature at noon 10 to 12 degrees below zero, and the wind from the northwest. Grimsley wore a cap, which was pulled down over his ears, and a fur-lined overcoat, the collar of which was turned up to or above the bottom of the cap. As he drove upon the main track he was struck and almost instantly killed by the engine of a west-bound mail and express train, which ran through the village on schedule time at a speed of some 40 miles an hour without stopping, and which was not scheduled to stop at the village.

The negligence of the company is alleged to be that the whistle and bell of the engine of the mail train were not sounded as it approached and passed through the village, as required by a statute of North Dakota; the leaving of the engine and train upon the passing and elevator tracks, and permitting the steam and smoke to escape therefrom, so as to obscure the view of the main track easterly from the standing engine; and the failure to have a flagman at the crossing to warn people of the danger from approaching trains. The railway company denied any negligence upon its part, and alleged that Grimsley was guilty of contributory negligence in driving upon the main track without ascertaining the approach of the mail train.

The plaintiff's testimony tends to show that neither the bell nor whistle of the engine of the mail train was sounded as it approached and passed through the village, or rather that they were not heard by Wellhauser and others who were in a position to hear them if they had been sounded. But a witness for plaintiff, who was upon or near Main street, testified that he heard the whistle of an engine to the east of the village shortly before the mail train passed. The testimony also tends to show that the steam and smoke of the standing engine was raised at times by the wind, and that a view of the railroad tracks to the east could then be seen through or under the steam and smoke. At the close of the plaintiff's testimony the defendant moved for an instructed verdict in its favor, which was granted, and judgment rendered against the plaintiff for costs, to reverse which this writ of error is prosecuted.

The testimony shows without any disptue that from the passing track to the main track, where Grimsley was killed, the distance is some 45 feet, and for that distance there was an unobstructed view of the main track for several hundred feet to the east, except as it was obscured by the smoke and steam of the standing engine; that the obstruction so caused was not continuous, but was intermittent and temporary only, rising and falling with the wind. Giving to the plaintiff the benefit of every inference that may reasonably be drawn in her favor from the testimony, it is clear that, if Grimsley had made a reasonable effort to do so, he would have discovered the approaching train in time to have avoided a collision with it. He was in full possession of the senses of sight and hearing, and it was his duty to make reasonable use of both to ascertain if a train was approaching upon the track he was about to cross. That track was in plain view, and was in itself a warning of danger, and if his view to the east was obstructed, as it is contended that it was, it was his duty to listen, and, if necessary, to stop his team, to ascertain if he might safely cross the track in front of the mail train. Instead of doing so, he deliberately drove upon the track and to his death. The mail train was certainly approaching rapidly upon the main track, and it seems incredible that he did not see it; and if he had stopped and listened he could not have failed to discover its presence.

It is said that he did look to the east after crossing the passing track. But if he did, and the plaintiff's contention is correct, then he must have discovered that his view of the track to the east was obscured; and he looked at a time when it availed him nothing to do so. That made it all the more imperative that he listen, and, if necessary, stop, that he might ascertain whether or not he was in the presence of danger. That he failed to stop his team is testified by at least two of the plaintiff's witnesses. If he had stopped, it is incredible that he should not have heard the train. Admitting that defendant was negligent as charged, the conclusion is unavoidable that Grimsley was inexcusably negligent in not discovering the approach of the mail train, and that such negligence was the direct and immediate cause of his death, and will preclude a recovery by his estate or dependent relatives therefor. The case upon its facts falls within the rule held by this court in Railway Co. v. Andrews, 130 Fed. 65–73, 64 C. C. A. 399.

The instinct of self-preservation is invoked by the plaintiff to save Grimsley from the charge of contributory negligence. That rule cannot be successfully invoked when the physical surroundings and circumstances conclusively establish that, if the deceased had taken the precautions that the law required of him, he would have discovered the danger which caused his death. Rich v. C., M. & St. P. Ry. Co., 149 Fed. 79–84, 85, 78 C. C. A. 663. We are of the opinion that the verdict was rightly directed for the defendant.

The judgment is therefore affirmed.