# Kelly *v.* Director General of Railroads, Appellant.

*Negligence—Railroads—Grade crossing—Stop, look and listen—*
*Presumption—Credibility of witness—Speed—Country district—*
*Signals—Time and distance.*

1. Where a presumption in favor of a party entitles him to have
his case submitted to the jury, it cannot be withdrawn from them
merely because the other party gives evidence tending to rebut that
presumption.

2. In determining whether the facts are so clearly established
that a court can say as a matter of law that the presumption is re-
butted, the proper criterion is whether a verdict in favor of the
party relying upon the presumption would be permitted to stand,
or whether the court would be bound to set it aside against the
evidence in the case.

3. In an action for death at a grade crossing the presumption is
that the deceased stopped, looked and listened.

4. If, in such case, the only witness who testified to seeing the
accident, stated that deceased did not stop, but the credibility of
such witness is seriously attacked, the case is for the jury.

5. No inference of negligence can be drawn from the mere fact
that a train was run at the rate of sixty miles an hour over a cross-
ing in a country district.

6. If one about to cross a railroad in the open country, stops,
looks and listens, and no train is heard or seen, and no warning of
its approach is given and obstruction and the contour of the coun-
try impedes sight and sound, the railroad company cannot, under
such circumstances, be allowed to move its train at such a reckless
rate of speed as will run down an unwarned traveler.

7. If there is a curve 658 feet from a crossing, and there are other
obstructions to the view, it is proper to take into consideration, in
determining whether the warning by whistle and bell was given
within such time and distance that a person who had stopped,
looked and listened at the proper place, and then started forward,
after seeing and hearing nothing, would have an opportunity to

cross the tracks before the train could reach the crossing from the point where the warning was given.

8. Where a person was killed in broad daylight at a crossing, and it appears that there were warning signs adjacent to the tracks and telegraph poles and wires along the tracks, it is reversible error for the court to charge that if the jury should find deceased neither knew, nor was there anything from which he should have known, of the existence of the railroad, until he was too close to approach with safety, the ordinary rule requiring him to stop, look and listen would not apply.

9. In such case where a map was offered in evidence by plaintiff showing the locality of a warning sign at the time the map was made, it is proper to admit evidence to the effect that the sign had been moved after the accident, and before the map was made, so as to explain the map, and show in what respect its physical condition differed from that existing at the time of the accident.

*Negligence—Damages—Carlisle tables—Death.*

10. In an action by a wife to recover damages for the death of her husband it is error to admit the Carlisle tables to show the expectation of the life of the plaintiff. The amount of damages is in no manner dependent upon the length of time the beneficiary may live.

Mr. Justice WALLING and Mr. Justice SCHAFFER dissented.

Argued April 18, 1922. Appeal, No. 174, Jan. T., 1922, by defendant, from judgment of C. P. Clearfield Co., May T., 1920, No. 88, on verdict for plaintiff, in case of Della Kelly v. Director General of Railroads, Agent. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Trespass for death of plaintiff's husband. Before BELL, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $10,000. Defendant appealed.

*Errors assigned,* inter alia, were various rulings and instructions, appearing by the opinion of the Supreme Court, quoting record.

*James P. O'Laughlin,* with him *Edward T. Kelley* and *Louis R. J. Fenerty,* for appellant, cited: Newhard v. R. R., 153 Pa. 417; Bernstein v. R. R., 252 Pa. 581; Smith v. McAdoo, 266 Pa. 328; Hanigan v. Ry., 257 Pa. 236; Kipp v. R. R., 265 Pa. 20; Lapinco v. Ry., 257 Pa. 344.

*J. A. Gleason* and *John C. Arnold,* for appellee.

OPINION BY MR. JUSTICE FRAZER, June 24, 1922:

Plaintiff seeks to recover damages for the death of her husband, who was killed by one of defendant's trains, which collided with an automobile deceased was driving over a grade crossing near Saybrook, Warren County, near noon on August 10, 1919. The trial resulted in a verdict for plaintiff. Motions for a new trial and judgment for defendant non obstante veredicto were dismissed and defendant appealed.

Defendant contends the presumption that decedent exercised due care for his safety as he approached the crossing was rebutted by the positive testimony of an eye-witness to the accident, to the effect that deceased did not stop before entering on the track. This witness, Mrs. Woodring, testified she was riding with a friend in an automobile driven by her son toward the crossing in question, heard the whistle of the approaching train, and that their car stopped to await the passing of the train; that the car deceased was driving was behind the car in which the witness was riding and drove past at the rate of about twenty miles an hour, did not stop, but, on the contrary, increased its speed somewhat to about twenty-five miles an hour, evidently to clear the crossing, and was struck by the train. To avoid the inference of contributory negligence naturally following this evidence, plaintiff contends that Mrs. Woodring's testimony that she was present and witnessed the accident was contradicted and the question was necessarily for the jury.

If Mrs. Woodring was at the place she says at the time the accident happened she was certainly in a position to observe and know what took place between the time she heard the warning whistle of the approaching train and the time the collision occurred. The evidence relied upon by plaintiff to impeach her credibility is not that of other eye-witnesses to the occurrence, who testified the accident happened in a different manner, or that deceased did, in fact, stop before attempting to cross the tracks. If this were the case the question clearly could not be taken from the jury. Here, the evidence merely tends to show that the witness was not present on the highway at the time and, consequently, could not have seen the accident, the inference from this being that she committed deliberate and intentional perjury in testifying as she did. The proof relied upon to establish this fact is as follows: A witness, Mrs. Linneman, who lived near the crossing testified she heard the crash, looked out of the window of her house and seeing a great deal of dust went immediately to the porch of her home where she had a full view of the crossing; that the train had then cleared the crossing (it in fact ran 1,400 feet beyond the crossing before brought to a stop) and there was no automobile in the highway; that she then went down the road to the crossing and there was neither a car nor a woman in sight; that she returned to her house for the purpose of telephoning and again went to the scene of the accident, at which time cars were beginning to accumulate rapidly. Mrs. Woodring testified that after the crash she alighted from her machine, walked forward to the crossing and down the track to view the wreck and that her son turned the car in the road and drove down opposite the wreck; that she went as far as the house of Mrs. Parish, opposite which the train had stopped. Mrs. Parish was called and, in answer to a question whether Mrs. Woodring was there, stated "No, I don't think she was." Two other witnesses testified they saw no car in the vicinity of the parish house corresponding to that

in which Mrs. Woodring was riding. We deem this evidence insufficient to raise a serious question as to the credibility of Mrs. Woodring's testimony. Failure of the various witnesses to see her or her automobile may be easily accounted for by the fact that the machine was driven away by her son immediately following the crash and by the further fact that the attention of all persons would naturally be fixed on the wreck and the injured persons, rather than upon the presence or absence of an automobile or person in the highway or of particular persons at or near the scene of the accident. Does this justify a court in saying as matter of law the presumption that deceased exercised due care was rebutted? Under the circumstances our answer to that is in the negative. Presumptions are only intended to take the place of facts and cannot be relied upon where the facts are shown: Chalfant v. Edwards, 173 Pa. 246, 252; Cohen v. Phila. R. T. Co., 228 Pa. 243, 247; Williams v. Metropolitan Edison Co., 267 Pa. 158, 161. But where a presumption in favor of a party entitles him to have his case submitted to the jury, it cannot be withdrawn from them merely because the other gives evidence tending to rebut that presumption: Penna. R. R. v. Weiss, 87 Pa. 447; Spear v. P., W. & B. R. R., 119 Pa. 61, 69; Doud v. Hines, 269 Pa. 182, 185. "The presumption of a fact in law, which carries a case to a jury, necessarily leaves them in possession of the case. True, the evidence to rebut the presumption may be very strong, yet it is a matter for the jury and not for the court. The force of the evidence may or may not be sufficient to convince them that the natural presumption arising from human instinct is repelled. But before they can come to this conclusion they must consider the circumstances under which the repelling witnesses testify. They may be such as not to convince a rational mind that the deceased heedlessly rushed into danger, or the character of the witnesses and their appearance before the jury may render them unworthy of belief, consequently the jury

only can determine the fact put in issue by the presumption of law": Penna. R. R. v. Weiss, supra, page 449. In determining whether the facts are so clearly established that a court can say as matter of law that the presumption is rebutted, the proper criterion is whether a verdict in favor of the party relying upon the presumption would be permitted to stand, or whether the court would be bound to set it aside as against the evidence in the case; or, to use the language of this court in Patterson v. Ry., 210 Pa. 47, quoted in Kreamer v. Perkiomen R.R., 214 Pa. 219, and Unger v. Phila., B. & W. R. R., 217 Pa. 106, "whether that presumption is rebutted is for the jury, unless the evidence to the contrary is clear, positive, credible and either uncontradicted, or so indisputable in weight and amount, as to justify the court in holding that a verdict against it must be set aside as a matter of law." In the present case, while the testimony of Mrs. Woodring was clear and positive, her credibility was attacked and this raised a question for the jury.

With respect to defendant's negligence there was evidence on part of plaintiff that defendant's train approached the crossing at the rate of sixty miles an hour. This fact alone would not warrant an inference of negligence. The crossing was in the country district where the rule has been applied that there is no limit to the rate of speed at which a railroad may run its trains so long as the bounds of safety to patrons are not transgressed: Custer v. Railroad, 206 Pa. 529, 533; Schwarz v. R. R., 218 Pa. 187, 196. The court below, in submitting the case to the jury and in its opinion subsequently filed, took the view that the crossing in question, by reason of the general contour of the land, the condition of the highway at the crossing, and the adjacent land, was of a particularly dangerous character and, consequently, a duty rested on defendant to take reasonable precautions to protect travelers having occasion to use the crossing. There is evidence that the railroad tracks were lined on each side by embankments covered with a

growth of bushes from two to six feet in height, which, to some extent, obscured the view of an approaching train. There is evidence that no warning was given of the approaching train, this, however, is merely negative in character and is contradicted by positive testimony of other witnesses, both for plaintiff and defendant, that the whistle was blown and the bell rung. The contention is, however, that even though such warning was given, it was for the jury, under the special circumstances, to say whether it was sufficient because of the obstructions to the sound and the distance from the crossing at which the whistle was blown and that this situation brings the case within Newhard v. R. R., 153 Pa. 417, where it was said, page 423: "The question of speed becomes material only when neither sight nor sound can avail the traveler."

A similar contention was made in Schwarz v. D., L. & W. R. R., 211 Pa. 625, and 218 Pa. 187. In the appeal following the first trial of the case, reported in 211 Pa. 625, it was said, in discussing the same question (page 628): "It appears from the evidence that one desiring to cross the railroad at this point could only see a train approaching from the direction from which this train came, for a distance of about 585 feet. Running at the rate of forty miles an hour, the train would cover this distance in about ten seconds, so that, if the driver stopped and looked and listened just before crossing the track, he might be caught before clearing the furtherest track if so little as ten seconds of time were required to go over the crossing. If the view of an approaching train was restricted to so short a distance as 600 feet or less, the defendant company was bound to take that fact into consideration and to so regulate the running of its trains as to make it possible for a driver to cross the tracks in safety if, when just before entering upon them, he stopped, looked and listened, and no train was within sight or sound."

On a retrial of the case the court below charged that where the conditions and circumstances were such that running a train at high speed would prevent a person from clearing the crossing before the train would reach it, then it was the duty of the company to moderate the speed. This court, in holding that the instruction was erroneous, said (page 195) : "If the question had been as to where the whistle ought to have been blown, there might have been no error in the court's submitting the rate of speed to the jury to enable them to determine how far from the crossing the signal ought to have been given. The instructions complained of may have been intended for that purpose, but they could hardly have been so understood by the jury, for they were told that where there is travel at all hours over a crossing, it is the duty of the company to moderate the speed of its trains. There was nothing to show that a traveler approaching this crossing could not have heard the whistle if it had been sounded. The case was tried on the theory that no whistle had been blown, not as to where it ought to have been blown, and the speed of the train was not involved. The crossing was in an open country, and in the direction from which the train was coming there was an unobstructed view of 600 feet. Its speed was immaterial, for sight and sound would have availed to protect the deceased from collision with it.

"It is not the rate of speed that prevents a traveler from passing safely over a railroad crossing in an open country, but the failure to give notice of the approach of the train by those in charge of it, or disregard of such notice by the traveler when given. What we said in 211 Pa. may have been misunderstood by the trial judge. All that was there said, or intended to be said, was that if one about to cross a railroad in the open country stops and listens, and no train is heard, that is, no warning of its approach is given by the engineer, the railroad company cannot, under such circumstances, run its train at such a reckless rate of speed as will run down the un-

warned traveler. This simply means that it is not the rate of speed that is the negligence of the company, but the failure to give proper notice of the approach of the train. With proper warning given of such approach in an open country, rate of speed is not a question in determining whether the railroad company was negligent, and this has been settled in our own and other states." And further, quoting Childs v. Penna. R. R., 150 Pa. 73, 77 : "We do not think a jury may fix the maximum rate of speed at which a train shall be moved in the open country, or that a high rate of speed is negligence per se. But while railroad companies may move their trains at such rate of speed as the character of their machinery and roadbed may make practicable, they must not forget that increased speed for the train means increased danger to those who must cross the tracks, and that increased care on their part to guard against accidents becomes a duty."

The case of Bickel v. Penna. R. R., 217 Pa. 456, is also relevant to the question under discussion. It appeared defendant's negligence turned upon the question whether the whistle was blown at the whistle post and the bell rung at the proper place. The court below instructed the jury that if the whistle was sounded at the post and the bell rung as the train approached the crossing defendant was entitled to a verdict. Notwithstanding this instruction, the jury found for plaintiff and in affirming the judgment it was said (page 460) : "The learned court might have gone further and told the jury broadly that it was the duty of the defendant's employees in charge of the train to have given timely and sufficient warning of its approach to the crossing in view of the circumstances of the case, such as the character of the crossing, the ability of travelers to see an approaching train, the rate of speed of the train, etc., and that, failing to do so, the plaintiff, in the absence of negligence on the part of the deceased, was entitled to recover. While the law does not point out any particular mode or manner in

which notice of trains approaching a crossing shall be given, it does require that some suitable and adequate means, adapted to the circumstances, shall be adopted and applied."

Following a discussion of earlier decisions, the court said further (page 461) : "From these and other cases the rule is established that it is the duty of the employees of a train approaching a crossing to give such signal as will protect the traveler if he is in the exercise of ordinary care. It is not a conclusive answer for a railroad company to say that the bell was rung or the whistle was sounded in reply to a charge that a train negligently approached a grade crossing, unless it appears that under the circumstances of the case such signal was sufficient to give timely notice to travelers who were approaching the crossing on the highway. At such crossing, the duties of the company and of the traveler are reciprocal. Each must approach the crossing with a due regard for the rights of the other, and when either fails to observe the care required, it is negligence for which the guilty party is responsible. Either party will only be absolved from the charge of negligence if he has done what the circumstances of that particular case required a prudent man to do."

In the present case the evidence is not clear as to what extent the view of an approaching train was obstructed by the embankment and undergrowth. There was a curve in the railroad beginning at a distance of 658 feet from the crossing. Aside from the question of obstruction, a view of the tracks by one approaching on the highway could be had for at least this distance. The negligence charged was, inter alia, that the train approached the grade crossing "without due and proper warning by bell, whistle or proper signal whereby the approach of the train into and upon said crossing could be detected or apprehended by a user of the public highway." While the speed of the train was not in itself evidence of negligence, it was proper, in view of the peculiar conditions,

to take it into consideration, in determining whether the warning by whistle and bell was given within such time and distance, that a person who had performed his duty to stop, look and listen and then started forward after seeing or hearing nothing, had an opportunity to cross the track before the train could reach the crossing from the point where the warning was given.

There is no force in the contention that the surroundings existing at the cossing were such that a traveler unfamiliar with the locality had no notice of the existence of the railway. There were two railroad crossings at this point, the first which decedent had already passed over was located sixty-four feet from defendant's tracks. In the space between the two lines of tracks were two signs, one on the right and a short distance from the first railroad, the other on the left adjacent to the crossing of defendant's tracks. In addition to these warnings were lines of telegraph poles and wires extending along the tracks and the only reason offered in support of the contention that the tracks were not visible was the fact that a slight upward grade for a short distance over which the traveler must pass before crossing defendant's railroad rendered the tracks incapable of being seen until quite close to them. A similar contention was made in Anspach v. Phila. & Reading Ry., 225 Pa. 528, where the accident happened at night on a road with which the injured person was not familiar and, hence, in approaching the crossing did not stop to look and listen. In disposing of this argument it was said (page 531) : "But the defendant company was not to blame for any ignorance in this respect upon the part of Anspach. It was not its duty to hunt him up and inform him of the location of its line. Had the approach of these parties been in daylight, no excuse could have been offered for their failure to observe the railroad and take the usual precautions against danger. Nor can anything be fairly predicated in favor of Anspach and his companions because they were traveling in the darkness. If they chose

to use the highway at night they incurred the risk of encountering such obstacles as might lawfully be found along the line of travel.   The railroad was where it had the lawful right to be, either by day or by night.   It is plainly the duty of parties wishing to travel over an unknown road at night, to inform themselves in advance of possible dangers that may beset their way." See also Serfas v. Lehigh & N. E. R. R., 270 Pa. 306, 308, 309.

It was therefore error on the part of the trial judge, in his answer to the defendant's first point for charge, to instruct the jury that if they should find deceased neither knew, nor was there anything from which he should have known, of the existence of the railroad until he was too close to approach with safety, the ordinary rule requiring him to stop, look and listen would not apply.   The accident happened in broad daylight and it was the duty of deceased to see what was in the roadway ahead of him. The case of Wanner v. Phila. & Reading R. R., 261 Pa. 273, is distinguishable from the present in that the usual railroad crossing sign was not placed adjoining the track but was nearly 200 feet distant from the crossing and on the frame-work of the opposite end of a covered bridge and in such position that it could not be readily noticed by persons driving along the highway.   At the other entrance to the bridge it would, of course, serve no notice of the possible existence of a railroad crossing.   There was no opportunity to obtain a view of the railroad until the traveler emerged from the bridge close to the tracks and it was held for the jury to say whether warning by the ringing of a bell from a point 200 or 300 feet distant from the crossing was sufficient to give persons approaching through the covered bridge proper notice of the distance of the crossing.

The first assignment of error complains of the admission of evidence to prove that the warning sign was removed after the accident and placed in a different position.   A map offered in evidence by plaintiff showed the locality of the sign at the time it was made and it was

proposed to show the sign had been moved subsequent to the accident and before the measurements for the map were made. This evidence was properly admitted for the purpose of explaining the map and showing in what respect its physical conditions differed from that existing at the time of the accident: Metzler v. Phila. & Reading Ry., 28 Pa. Superior Ct. 180, 192.

Complaint is made in the second assignment of the action of the trial judge in admitting in evidence the Carlisle Mortality Tables to show not only the expectation of life of the deecased, but also plaintiff's own expectation of life as bearing on the question of damages. This evidence was improperly admitted for the latter purpose. The measure of damage is based on the loss of earnings of the injured person during the period which he may be expected to have lived had he not been injured and the present worth of the total of such prospective earnings is due and payable to the person entitled thereto in a lump sum. The expectation of life of such beneficiary is immaterial to the question of the amount of damages. Such amount is in no manner dependent upon whether or not the beneficiaries should live one year or twenty years. As the evidence in this case showed that the wife had a higher expectation of life than her husband it cannot be said that the admission of the testimony could not have harmed defendant: Emery v. Phila., 208 Pa. 492.

The second, fifth and sixth assignments are sustained and the judgment reversed with a new venire. ·

DISSENTING OPINION BY MR. JUSTICE SCHAFFER:

In my judgment, the evidence in this case as set forth in the majority opinion shows plaintiff's decedent to have been guilty of contributory negligence, and it also, it seems to me, overthrows the presumption that he did his duty. The speed of the train cannot convict the defendant of negligence (Craft v. Hines, 272 Pa. 499). The negative testimony as to lack of warning was com-

pletely overthrown by the positive testimony for both plaintiff and defendant (see majority opinion) that the whistle was blown and the bell rung (Craft v. Hines). I would hold the plaintiff not entitled to recover and enter judgment for the defendant.

DISSENTING OPINION BY MR. JUSTICE WALLING:

I join in this dissent on the ground that the evidence is not sufficient to support the finding that defendant was guilty of negligence.