PENNSYLVANIA R. CO. v. CUTTING et al.

(Circuit Court of Appeals, Second Circuit. February 2, 1925.)

No. 194.

1. Railroads ⬤═327(2)—Failure to see train visible contributory negligence as matter of law.

Where unobstructed view of approaching train at crossing makes it possible for automobile driver to see train if he looks, he is chargeable with contributory negligence as matter of law despite testimony that he looked and did not see train.

2. Railroads ⬤═350(16)—Whether automobile driver stopped, looked, and listened, held for jury.

In action for death of automobile driver, struck by train at crossing, whether driver stopped, looked, and listened, as required by the Pennsylvania statutes, held for jury.

3. Railroads ⬤═350(19)—Rule as to weight of experiments showing view of train approaching crossing, stated.

Due weight will be given and high regard had for measurements and experiments to show how a train approaching a crossing could be seen from various points on the highway, but such evidence is not necessarily conclusive, and experiments must be weighed in the light of the knowledge that they were made after the event.

4. Evidence ⬤═474(5)—Wife's testimony as to deceased husband's income held admissible.

In wife's action for death of husband who had been dairy farmer and had not as such kept books of account, wife, who had assisted husband in such work and had frequently talked with husband in regard to and was familiar with the business, was properly permitted to testify as to net income.

Hand, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western District of New York.

Action by Eva A. Cutting and others against the Pennsylvania Railroad Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

Harold J. Adams, of Buffalo, N. Y. (Evan Hollister, of Buffalo, N. Y., of counsel), for plaintiff in error.

Reed, Wait & Spofford, of Erie, Pa., and Henry W. Brush, of Buffalo, N. Y. (Henry W. Brush, of Buffalo, N. Y., of counsel), for defendants in error.

Before ROGERS, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. The plaintiff in error operates a steam railroad through the city of Corry, in the state of Pennsylvania, and crosses Columbus avenue, a public highway, at right angles. The railroad runs about north and south, and Columbus avenue, east and west. The deceased on the 18th day of May, 1923, at about 9:30 a. m., operating a Ford commercial truck, drove west along Columbus avenue, toward the railroad track, and while crossing was struck by a locomotive, coming from the south, hauling a passenger train, and received injuries from which he shortly thereafter died. He was last seen driving along Center street and turned off at Columbus avenue according to the witnesses of the defendants in error. Center street turns west after crossing Columbus avenue and crosses the railroad tracks diagonally. One witness who gave this testimony said that he (the witness) continued on, increasing his speed slightly, and proceeded to the vicinity of Center street crossing when he heard the crash of the collision. This witness gave an estimate of two or three minutes as the time that expired from the time he last saw the deceased and the time of the collision. The speed of the deceased, as he was driving up Columbus avenue after passing the warehouse on the southerly side, was given as about 8 miles per hour.

Some nine witnesses, who were in a position to hear and most of them attentive, gave testimony that no signals were given of the approach of the train to the highway crossing. We regard the question of negligence in failing to blow the whistle, or give other signal of the approach of the train, as a jury question in view of the testimony produced by the defendants in error on this point and the denial thereof by the witnesses called by the plaintiff in error.

[1] The principal question presented by this writ is whether or not a verdict should have been directed for the plaintiff in error, because, as it is argued, the deceased was guilty of contributory negligence as a matter of law. The statutes of Pennsylvania required the deceased to stop, look, and listen at this crossing. The engineer and one witness said they saw him drive to the crossing and he did not stop and look. In other words, that he disobeyed this statute. The statutes of Pennsylvania also create a presumption, in death cases, that the deceased did stop, look, and listen at the crossing. But the argument proceeds, first, that two witnesses have testified that they saw the deceased drive to the crossing, and that he did not stop, and, second, that the physical situation gave an unobstructed view of the approaching train, and that if the deceased did look, he must have seen the train, or that he could not have looked without seeing it. To say one looked and did not see, when there are no obstructions and the view is clear, is so incredible that courts will charge contributory negligence in such a case as a matter of law. Fluckey v. Southern Ry., 242 F. 468, 155 C. C. A. 244; Grimsley v. Northern Pac. Ry. Co., 187 F. 587, 109 C. C. A. 417; N. Y. C. & H. R. R. Co. v. Maidment, 168 F. 21, 93 C. C. A. 413, 21 L. R. A. (N. S.) 794; Hagglund v. Erie R. R. Co., 210 N. Y. 46, 103 N. E. 770; Dolfini v. Erie R. R. Co., 178 N. Y. 1, 70 N. E. 68.

[2] It is said that the testimony of two witnesses—the engineer and a man who said he stood at the garage and saw the deceased driving along Columbus avenue to the track and into the collision, and who testified that he did not stop—overcomes the presumption granted by the statute that he did stop, look and listen. We think the credibility of these two so-called eyewitnesses was for the jury. One, the engineer, was thoroughly interested. He was charged with wrong resulting in death. He was interested in exculpating himself, and that great interest made his testimony a fit subject for the jury's estimate as to its value. The other witness said he was standing at the door of a nearby garage and witnessed the collision and saw the deceased drive up to and over the crossing without stopping, at about 15 miles an hour. But his testimony was forcefully contradicted by two witnesses called by the defendants in error, both of whom said this witness was in the "drive-in" space to the rear of the front doors or in the rear of the garage and was assisting in making repairs to his car, and they said that this witness first had his attention called to it by the proprietor of the garage. He could not see its happening from where he was in the rear of the garage. The truth or falsity of the witness' testimony was for the jury in view of this rebuttal.

Nor did the physical situation present such

a clear view for seeing the on-coming train as to require the trial judge to hold that the deceased was guilty of contributory negligence as a matter of law. It is agreed that approaching the crossing from the west on Columbus avenue, traveling as the deceased was, the last obstruction of his view, looking southerly, in the direction from whence the train came, was the oil warehouse, about 80 feet from the crossing. About 400 feet from the crossing, the railroad tracks pass through a cut which, some witnesses say, hides the train from view as it passes through. Others say not. The track is straight, but there is testimony of a slight grade beyond the cut. There is a small climb up the highway near the tracks. The testimony of the plaintiff in error shows that at 82 feet from the crossing there is a view of 563 feet; at 40 feet, 751 feet; and at 20 feet, 1,157 feet. On the other hand, the defendants in error's witnesses say that the view is 400 feet only up to and as close as 26 feet from the track—at the commencement of the incline leading across the track. This is the point at which a motor-car driver would be presumed to fulfill his duty to stop, look, and listen. If he looked, then he could have seen to this cut, according to the testimony of the defendants in error. There is reason to accept the presumption that he did look here. If he did, it is very probable that the train was not in sight, and this is consistent with the fact of the subsequent collision. The deceased, after looking south, had to start his car forward and possibly to change his speed. He was obliged to look north, the opposite direction, and straight ahead in the operation of the car. He might have done all this and in so doing would be obliged to give it a divided allegiance for he was obliged to operate the motor car at the same time in traveling this 26 feet across the track. He had succeeded in crossing so far as to have his front wheels extend over to the easterly side of the last rail when struck. With the train traveling 40 miles an hour, it would have covered the 400 feet from the cut in from four to six seconds. A jury might well say that it would require more than four to six seconds for the deceased to have operated his car over the 26 feet across the track. These estimates of time and distance illustrate a close calculation. This, with the rapidly occurring events, makes the question of due care on the part of the deceased peculiarly a jury question. The rule for the jury's guidance as to the physical situation was sharply called to the jury's attention by the learned trial judge, in the main charge given, and when the jury returned for further instructions on this point. At the latter occurrence, the court said:

"If you conclude to reject the testimony of Buxton and the engineer as unreliable and unworthy of belief, you must look to the surrounding facts and circumstances—to the physical situation—to see whether the presumption is not overcome by the situation itself."

The courts in Pennsylvania have frequently considered the effect of the presumption that a deceased is presumed to have stopped, looked, and listened, and the rule is announced that—"Whether the presumption is rebutted is for the jury, unless the evidence to the contrary is clear, positive, credible and either uncontradicted, or so undisputed in weight and amount as to justify the court in holding that a verdict against it must be set aside as a matter of law." Pennsylvania R. R. v. Weber, 76 Pa. 157, 18 Am. Rep. 407; Kelly v. Director Genl. of R. R., 274 Pa. 474, 118 A. 436; Kreamer v. Perokiomen R. R., 214 Pa. 219, 63 A. 597; Unger v. Phila., B. & W. R. R., 217 Pa. 106, 66 A. 235. It is only where there is positive and direct evidence that the deceased did not stop, look, and listen before attempting the crossing and there is no testimony that he did perform his duty, can there be a direction by the court as a matter of law. Schmidt v. Phila. & R. Ry. Co., 244 Pa. 207, 90 A. 569. Since the accident occurred in the state of Pennsylvania, these cases guide us in our conclusion that under the facts here presented, the question of contributory negligence was for the jury.

[3] Due weight will be given and high regard had for measurements and experiments to show how a train approaching a crossing could be seen from various points on the highway. Such evidence is frequently very reliable and satisfactory, but it is not necessarily conclusive. Such experiments must be weighed in light of the knowledge that they are made after the event, when minds are clear, free from distractions, or divided allegiance which the wayfarer has when crossing. They are never made under the precise circumstances which attend the experience of one who crosses and is injured. Greany v. Long Island R. R. Co., 101 N. Y. 424, 5 N. E. 425. The plaintiff in error may not raise a question of law out of this physical situation without eliminating every possible inference consistent with observations of due care, the very first of which must be that the train was in sight before or at the time

the deceased stopped, looked, and listened. If, after he stopped and then proceeded, he faced an emergency of imminent peril, then the absence of the best judgment will not defeat his right to go to the jury. Judson v. Central Vt. R. R. Co., 158 N. Y. 597, 53 N. E. 514; Lewis v. L. I. R. R. Co., 162 N. Y. 52, 56 N. E. 548. "If a traveler on a public highway be killed on a railroad crossing, the fact that the engineer of the train omitted to give the statutory signal or other warning, divests the acts of the deceased of the character of concurrent negligence in law; whether it was so in fact was a question for the jury under proper instructions. So, the traveler had a right to assume that the crossing was safe and that the company was not violating the law." Ernst v. Hudson R. R. Co., 35 N. Y. 9, 90 Am. Dec. 761; Schmidt v. Phila. & R. Ry. Co., 244 Pa. 207, 90 A. 569.

[4] Error is assigned for receiving in evidence proof of income of the deceased which, it was said, was made up largely of profits from the sale of cattle and the operation of a farm. The deceased's widow testified that he had sold his farm and was about to engage in the business of selling ice at retail and had just started driving an ice wagon, making retail deliveries. She testified that her husband had been a dairy farmer for some years. He owned and sold cows and milk. She assisted in this work, milking the cows and caring for the farm. No books were kept. She frequently talked with her husband about their affairs and stated that she was familiar and could estimate their profits and she said their net income was about $2,000 to $2,500 per year. Her husband provided for them according to his means, and they, with their two children, aged 11 and 9 years, lived accordingly. The deceased was 37 years of age and had an expectancy of life of 29 years. The damages awarded were $10,000. In view of the fact that no books were kept and the witness proved to be familiar with the affairs of her husband, and because of that familiarity was able to state the net income and the use thereof for their common support, it was not error to admit the amount of his net earnings under these circumstances. The rule, of course, is different where there is an investment in the business and books of account are kept and that investment makes up part of the earnings or income of the deceased. We think such rule has no application to the facts here and find no error was committed in the admission of this testimony.

Judgment affirmed.

HAND, Circuit Judge (dissenting). It might indeed be better if a railroad were as absolutely liable for persons killed on its tracks as a master is for workmen's compensation. Whether the category of fault in such cases has any useful social purposes may be open to doubt. But while the law professes to make liability depend upon it, juries and judges ought really to apply it; there can be no merit in professing it in theory and ignoring it in practice. If the facts admit of only one hypothesis, how may we say vaguely that there is a question for the jury?

This decedent was killed on a bright May morning at the crossing of a highway and a straight track. I do not rely on the testimony of the defendant's witnesses, since that was for the jury; but I do rely on the terrain which to my mind conclusively precluded an accident at the place if the driver were watchful. The question depends entirely on where one must be to get a straight far view of the track. Nobody, I suppose, would say that if, when one was 100 feet away, the whole track were open for a mile, one could get oneself killed without carelessness. There was a very low cut which began some 400 feet away from the crossing. If that had obscured the train until one was beyond a position of safety, I should not complain; but it certainly did not, and so far as the plaintiff's witnesses so swore the photographs conclusively disproved it. The evidence is in my judgment undisputed that at 20 feet from the track one could see approximately 1,200 feet; or if there was literally a dispute, at least no jury might find the opposite. Thus if the train were running at 40 miles an hour, as was the fact, the decedent had nearly twenty seconds to pass the 20 feet. He had no hand gears to shift and nothing to do but press his foot and go on at a rate of not less than 5 miles an hour. Moreover, if 1,200 feet were not enough, at 10 feet from the track he could have seen for a distance which on any theory was enough.

My thesis is only this: A man must use some care to stop and look where it will serve his safety. If he cannot see far enough at 20 feet, he ought to stop at 10 feet, because a Ford car will not shy. Had he observed this obvious requirement he could not have been killed, and as long as we take the law seriously I submit that no jury ought to have been allowed to find otherwise. I do not find it necessary to have recourse to the Pennsylvania statute, though that makes the duty more explicit.

As I think the plaintiff should be nonsuit anyway, I express no opinion on the question of damages.