# Custer, Appellant, v. Baltimore & Ohio Railroad Company.

*Negligence—Railroads—Speed of train—Crossing.*

Proof of excessive speed at a crossing when accompanied by the exhibi-
tion of facts showing proper safeguards for the customary and ordinary
use of the crossing, is insufficient to take a case to the jury on the ques-
tion of negligence.

In an action against a railroad company to recover damages for the
destruction of two horses and a wagon, the evidence is insufficient to sub-
mit to the jury which is in effect that plaintiff's team in attempting to pass
over a grade crossing in a populous suburb became stalled on the tracks
of the railroad by reason of snow and ice on the planking; that before
the horses could be unhitched, a train running at the schedule rate of
sixty miles per hour reached the crossing and killed the horses; that an
effort was made by the employees of the railroad to give notice to the
approaching train by dispatching a man towards it with a red flag; that
the crossing could be seen at a distance of some 4,400 feet looking through

a tunnel, and that a block signal about seventy-five feet beyond the crossing was set to hold the train, but that the engineer was unable to stop the train after seeing the signal before the point of collision; that the crossing was protected by gates in charge of a gateman; that no complaint was made of the gates or of the gateman, and that the wagon had ample time to make the crossing before the approach of the train had it not been stalled in the manner described.

Argued Nov. 19, 1901.    Appeal, No. 40, Oct. T., 1901, by plaintiff, from order of C. P. Delaware Co., March T., 1899, No. 193, refusing to take off nonsuit in case of Isaac R. Custer v. Baltimore and Ohio Railroad Company.    Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Trespass to recover damages for destruction to two horses and a wagon.    Before BUTLER, J., specially presiding.

At the trial it appeared that the accident which resulted in the injuries complained of occurred on January 2, 1899, at the Woodland avenue crossing of the Baltimore & Ohio Railroad in the borough of Darby.    The circumstances of the accident are detailed at length in the opinion of the Superior Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was the order of the court.

*O. B. Dickinson*, for appellant.—Under the facts it was clearly the duty of the defendant to have stopped its train both for the protection of the plaintiff and that of the passengers if it could.

There was ample time to have stopped the train had the effort been made sooner or had not the negligent running of the train frustrated the effort.

Whether under the circumstances it was a proper or negligent speed was a question which, under the law, a jury, and a jury alone, could answer.    Speed is always for the jury: Reeves v. Delaware, etc., R. R. Co., 30 Pa. 462; Hagan v. Phila., etc., R. R. Co., 5 Phila. 179; Hagan v. Phila., etc., R. R. Co., 47 Pa. 244; Bard v. Phila., etc., R. R. Co., 199 Pa. 94.

*William B. Broomall*, for appellee.—No duty devolved upon the railroad company in this exigency except to use its best

efforts to stop the train.   This was done: The Pittsburg, Fort Wayne & Chicago Railway Co. v. Dunn, 56 Pa. 280.

OPINION BY WILLIAM W. PORTER, J., February 14, 1902:

The nonsuit in this case was entered upon a somewhat unusual state of facts.   The servant of the plaintiff was driving, in the afternoon, a farm wagon, drawn by two wheel horses and a leader, upon Darby road, in the borough of Darby, a populous suburb of the city of Philadelphia.   Upon this road were two trolley tracks.   Across it ran the double tracks of the defendant railroad company at grade.   The crossing was protected by gates in charge of a gateman.   To ease the crossing for vehicles the highway was planked across the defendant's tracks.   These planks were, at the time of the accident out of which this action grew, somewhat slippery by reason of a thin coating of ice. The wagon was pulled slightly out of the road way.   The horses got upon the track of the railroad.   The wagon was impeded by some snow.   The surface between the railroad tracks being slippery, the horses were unable to move the wagon.   A couple of minutes were consumed in efforts to compel the horses to draw the wagon across.   A station of the railroad company was close to the highway.   The driver of the wagon was notified that a fast train, known as the "Blue Line," was due to pass in about two minutes.   Finding the horses unable to start the load, the driver (with some assistance) succeeded in detaching the lead horse, but before he could detach the wheelers, the train arrived and killed the two horses.   Effort was made by the employees of the railroad to give notice to the approaching train by dispatching a man toward it with a red flag.   A block signal, in the opposite direction seventy-five feet beyond the highway, was dropped.   When the accident occurred the train was running at the schedule rate of fully sixty miles an hour.   The highway crossing was visible to one standing on the track used by the approaching train, at about 4,400 feet, looking through a tunnel.   The engineer of the train testified that he could not have stopped his train in less than one half to three quarters of a mile.   The train was stopped a short distance beyond the block signal.

The court below entered the nonsuit on the ground that there was no sufficient proof that the injury to the plaintiff was due

to negligence on the part of the railroad company. The contention of the plaintiff is that it was the duty of the defendant to stop the train and that the failure to do so was negligence. This proposition is attempted to be supported upon the grounds either (1) that the speed of the train was so excessive as to prevent the engineer from stopping; or (2) that the engineer was negligent in not being observant of the signal to stop.

It is to be remarked before discussing these propositions that the condition of the crossing by reason of the ice upon it, is not alleged to be negligence; nor is there any complaint of failure of duty on the part of the persons in charge of the station to act promptly and wisely in the emergency; nor of the gateman who had charge and control of the protections to the crossing. The wagon of the plaintiff had ample time to make the crossing before the approach of the train, had it been made even in a dilatory manner. T..e presence of the horses upon the railroad tracks was due to the unusual circumstance of the stalling of the wagon at the edge of the crossing.

1. In actions for injuries received at the hands of both steam and trolley roads, the element of speed is of frequent presence. In some of the cases proof of excessive speed has been sufficient to carry the case to the jury on the question of negligence. The train, in the case before us, was moving at a great speed, according to the engineer's testimony, fully sixty miles an hour. But a few years ago, in the beginnings of rapid transit, such a rate of speed would have been regarded as worse than perilous to passengers and to public. Now, however, such a rate of speed in railroad trains is known to be demanded by the public and furnished by the transporting companies. Its use, however, over grade crossings is attended with great danger, and the policy of the law in Pennsylvania is to discourage and prevent such crossings. Where, however, they do exist, the railroad companies are bound to regard the peril and to furnish proper safeguards. These safeguards must be adequate to protect both passengers and public against all dangers of the crossings which may arise from the usual and ordinary use of such crossings. Proof of excessive speed at a crossing, when accompanied by the exhibition of facts showing proper safeguards for the customary and ordinary use of the crossing, is insufficient to take the case to the jury on the question of negligence. Con-

ceding that the speed of the train in the case before us was great, the crossing was protected by gates in charge of a gateman. No allegation is made that the gate was improper, or that the gateman was derelict, or that these safeguards were insufficient to protect the crossing from accident when used in the ordinary way. The presence of the plaintiff's horses upon the track, stalled, was not a condition which the railroad company was bound to anticipate or to provide against in determining the speed of its trains. The condition was extraordinary. If railroad companies were bound to use only such speed as would enable them to stop their trains on any temporary obstruction of crossings by vehicles or pedestrians, what right would there be to hold the company to the duty of erecting and maintaining guards and gatemen? Therefore, we may conclude that the proof of the high speed of the train in the present case was not sufficient to take the case to the jury. From this it follows that, if the speed of the train prevented the engineer from stopping before the collision, the failure to stop was not negligence on the part of the engineer.

2. The second proposition on which the appellant relies is, that the engineer failed in duty in not stopping on the signals which were given. There is some testimony that the crossing could be seen at a distance of some 4,400 feet, looking through a tunnel, and that the block signal, about seventy-five feet beyond the crossing, was set to hold the train. Such a signal, as is well known, indicates to the engineer that the block beyond the signal is closed. It is no indication to him that he cannot run up to the signal, or of any danger between him and the signal. The setting of the block signal, therefore, is, in this case, an unimportant matter, save as it shows the efforts on the part of the employees of the railroad to avert the collision.

When it became apparent that the horses could not draw the wagon over the tracks, an employee of the railroad ran in the direction of the approaching train with a flag, and reached a point, perhaps 500 feet from the crossing when the train swung into view. A short distance further on another man attempted to signal the train by waving his coat. In must be remembered that while we are now discussing distances of some magnitude, we are dealing with excessively small fractions of time. Charging the engineer with vision of the horses upon the track at a

distance of 4,400 feet, he had no more than forty-five seconds to see the signals or the horses, and to act by putting every appliance into action which might lead to the abrupt stoppage of the train. He was traveling at least a mile a minute. It required from half to three quarters of a mile to bring the train to a stop. If the latter, he must have exerted the appliances at the very instant of the first possible vision. A failure to see and to act for over fifteen seconds meant inevitable collision, even if every appliance were used that could be used. If he be charged with the duty to act when emerging from the tunnel, it was then, under the evidence, too late to stop. But further than this, the presence of the horses on the track at the crossing at a distance of three quarters of a mile, did not necessarily mean to the engineer that they were stalled. Nor was it shown that one in the cab of a locomotive in motion has the same accuracy and opportunity of vision as the witness who testified that he went upon the track on foot with the one object of determining at what distance the crossing was visible. Beyond all this, the plaintiff called the engineer and endeavored to extract from him the distance in train lengths within which the train could have been stopped. The question was asked: "How many lengths of train?" to which answer was made: "He could not stop from the time you see that signal until you pass it." The one possible construction to be placed upon this is that the witness was not able to stop the train from the moment of seeing the block signal until he had passed it. That it was not necessary to pass for any considerable distance was shown by the facts in the case. The effect of this testimony by the plaintiff's witness was to show that he was unable to stop the train after seeing the signal before the point of collision. This is conclusive against the plaintiff of the fact that the engineer was negligent in failing to stop at the earliest moment. But the plaintiff replies that if this be true, then the defendant was negligent in not having a signal in a position to protect the crossing. The answer is that the signal was not intended to protect the crossing, but only the block beyond the signal. The crossing was protected by the gates and the gateman in the ordinary and usual method adopted for protecting such crossings.

In this discussion we have endeavored to give to the plain-

tiff's evidence all the weight to which it is entitled. We can find in it nothing which proves the defendant company guilty of negligence, nor from which a jury might legitimately infer negligence. Therefore, we conclude that no error was committed by the court below in refusing to take off the judgment of non-suit.

Judgment affirmed.

RICE, P. J., dissenting:

Whether in view of all the circumstances—the location of the crossing in a populous suburb of the city of Philadelphia; its condition as to ice and snow on the day in question, because of which the plaintiff's team was stalled; its distance from the point where it would come in view of the engineer of an approaching train looking out for the crossing and the block signal at that point; the time that would elapse in traversing that distance; the condition of the block signal, and the other warnings that were given—the duty of exercising due care required the train to be stopped so as to avoid the collision, and whether it could have been stopped were questions of fact which I respectfully but earnestly contend should have been submitted to the jury. This is not one of those clear cases in which it is the duty or the province of the court to declare as a matter of law that the defendant performed its whole duty.

Therefore, I am unable to concur in the judgment about to be entered.

Judge ORLADY concurs in this dissent.